No. 3905

Second Circuit

SOUTHERN GAS LINE, INC., v. DIXIE OIL CO. ET AL.

(January 27, 1931. Opinion and Decree.)
(February 26, 1931. Rehearing Refused.)

Polk & Robinson, of Alexandria, attorneys for plaintiff, appellant.

Robert A. Hunter, of Shreveport, attorney for defendants, appellees.

McGREGOR, J. The Southern Gas Line, Incorporated, claims from I. R. Packard and Dixie Oil Company, Incorporated, the sum of $1,018.19, balance due on open account for gas sold and delivered by the plaintiff to defendants, which gas, it is alleged, was used by the defendants in the drilling for and production of oil under a certain oil and gas lease owned by them in the parish of La Salle, this state. It is further claimed and alleged by plaintiff, the Southern Gas Line, Incorporated, that it has a lien and privilege on the said lease, together with all the machinery, apparatus, and accessories thereon or thereto appertaining or belonging, as a furnisher of necessary supplies and materials to and in the drilling operation of the said lease. Suit was brought by the plaintiff against the defendants in solido in order to enforce the lien and privilege claimed. The defendants filed an exception of no cause or right of action, which was sustained by the lower court. It is from this action that this appeal is being prosecuted.

While the question involved may not have been raised heretofore in the exact form in which it is raised in this case, there is ample authority in this state to decide it without having to resort to the decisions of other states. It is apparent that, if the plaintiff had any lien as claimed in its petition, it is solely under Act 298 of 1926. There is no doubt as to this act applying to oil and gas wells, and, if the plaintiff has any lien, it is to be found in it. This is admitted by counsel for both sides, so the only question to be determined is whether gas furnished, for fuel in the drilling of a gas or oil well is "material" furnished "for the erection, construction, repair or improvement of immovable property" within the purview of this act. It is significant that in paragraph 6 of its petition the plaintiff asserts its lien *"as a furnisher of supplies* and materials to and in the drilling operation of said lease."  (Italics ours.)

The law relied upon by plaintiff makes no mention of *supplies* but confines itself to *materials.*

Counsel for plaintiff in his brief says:

"The nearest approach to jurisprudence of this state upon the subject is found in the case of Red River Construction Company v. Pierce Petroleum Corporation, 165 La. page 565, 115 So. 752. That case is easily differentiated from the case at bar. In the first instance because it is a case relating to public works, and in connection therewith the Supreme Court uses the following language:
" 'In this state laws in derogation of common right must be strictly construed and cannot be extended beyond their precise terms of this Court or statutes of the kind under consideration here—*Statutes which are designed to hold public authority having the work done responsible under certain circumstances for the debts of the contractor.* * * *' "

Counsel then says:

"So from this we see that the Court draws a distinction between statutes relating to work done by public authorities and other statutes."

We cannot agree with this statement. Counsel has misquoted and misconstrued

the citation. It not only does not draw the distinction contended for, but it practically negatives any such distinction as claimed by counsel. The first sentence of the citation is as follows:

"In this state laws in derogation of common right must be strictly construed and cannot be extended beyond their precise terms."

Then follows the statement:

"Of this character are statutes of the kind under consideration here—statutes which are designed to hold the public authority having the work done responsible under certain circumstances, for the debts of the contractor, and to hold the contractor responsible for the debts of the subcontractors, and to substitute the bond required for the security which is otherwise granted a claimant under their provisions."

It is contended that, since the case from which the above citation is taken deals with the construction of public roads under public contract, the reasoning used, the interpretation placed on the words used in the statute, and the conclusion reached are different from what they should be in cases involving "the erection, construction, repair or improvement of immovable property" under private contract. It must be admitted that liens are in derogation of common right, and since they are, they must be strictly construed. That is the principal statement set forth in the citation made by counsel for plaintiff from the case named above. Then, after laying this down as a *general* proposition, the court proceeds to say, "Of this character are statutes of the kind under consideration here. * * *" We think that, if Justice Rogers had been deciding the case at bar, his words would have been as follows:

"In this state laws in derogation of common right must be strictly construed and

cannot be extended beyond their precise terms. Of this character are statutes of the kind under consideration here—statutes which are designed to hold the owner or party having the work done responsible, under certain circumstances, for the debts of the contractor and to hold the contractor responsible for the debts of the subcontractor and to grant a lien to a furnisher of material for the erection, construction, repair or improvement of any immovable property and to substitute the bond required for the security which is otherwise granted a claimant under their provisions."

We argee with counsel for defendant when he says that the decision in the case from which the above citation is taken placed this issue beyond controversy, but counsel for plaintiff says:

"The second dissimilarity between the cited case and the case at bar is that the cited case relates to a statute reading in part as follows:

"'Materials furnished *in* the construction, etc., * * * of such road.'

"Whereas, the statute under consideration herein, as the Court will note, relates to materials furnished *for* improvements of immovable property, and the Supreme Court in its decision rested its decision upon the theory that the statute contemplated, by the use of the word 'in,' that the material used should become a component part of the work done. Whereas, as the Court will note, in the case at bar, the statute upon which plaintiff relies refers to materials furnished *for* an improvement, and not *in* the construction."

We think this is a distinction without a difference. What would be the difference in meaning between "material furnished *in* the construction of a road or building" and "material *for* the construction of a road or building"? None. In all cases the material furnished *for* any project must of necessity be used *in* the project. We therefore see nothing in the contention as

to there being such a wide difference between the use and meaning of the word "in" in the statute construed by the court in the case cited and the word "for" in the statute relied upon herein.

But, to make our position clearer, that part of section 1 of Act 298 of 1926, which gives the lien in question, reads as follows:

"* * * Shall have a lien for the payment in principal and interest of such work or labor performed, or materials, machinery or fixtures furnished, and the cost of recording such liens, upon the land and improvements *on which* the work or labor has been done, or *materials*, machinery or fixtures furnished. * * *" (Italics ours.)

The use of the words "on which" as used in this statute in connection with the word "for" is certainly the same as the use of the word "in" in Act 224 of 1918. So we conclude that there is no difference between materials furnished "in" the construction of a public road and materials furnished "for" the drilling of an oil well.

Counsel for plaintiff cites the case of John H. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768, and says that it "is analogous to the case at bar." We think he is correct in this, but in that case the court rejected a demand which we think is similar to the demand in the case at bar. In that case the court said:

"The question in dispute is whether a claimant, who furnishes or does labor and supplies material for the repair of a dredge-boat and the machinery thereon, and pays the freight and express charges on the material furnished, while the dredgeboat is being used to excavate the canal, has a right or cause of action against the surety on the contractor's bond; the cause of action, if any, having arisen under Act No. 224 of 1918, prior to any amendment thereto."

Then the court proceeds to say:

"The question presented is not a new one in this state. It has been, in effect, twice decided by this court—once in the case of Red River Construction Co. v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752, and once in the case of State v. Smith, 167 La. 301, 119 So. 56. The theory upon which these cases were decided was that the work done or the material furnished must have entered directly into and must form part of the improvement constructed, to give the claimant a cause of action against the surety on the bond furnished. It is not sufficient that the work be done in repairing machinery used in constructing the improvement, or that the material furnished be used in such repairs, for in such case neither the work nor the material enters directly into the improvement. As plaintiff's claim does not consist of work done and material furnished, which entered directly into the improvement, plaintiff discloses no cause of action.

"Plaintiff seeks to differentiate this case from the two cases cited, on the theory that the work, in this instance, was of such a nature that 'nothing went into it, but everything came out of it.' Plaintiff is mistaken, even if this distinction could be deemed a differentiation. Doubtless no material entered into the construction of the canal, but it is impossible to conceive how any improvement can be constructed without something entering into it. In this instance it is manifest that the work done in excavating the canal went directly into it. However, be that as it may, the differentiation is no differentiation at all. It simply amounts to an effort to show that it is unnecessary that the work done, or the material furnished, entered into, or was incorporated in ,the body of the improvement constructed, which is in direct conflict with the two decisions which it is sought to differentiate. It is also urged by plaintiff that the construction placed by us on the act of 1918 in the Red River Construction Company case, and followed in the Smith case, is too restricted, and is not in accord with the jurisprudence

in other states. In our view, the construction placed on that act in those cases is not unreasonable, or too restrictive, and should remain undisturbed. As to that construction being out of accord with the jurisprudence in other states, that position was fully considered by us in the Red River Construction Company case."

So we see that this John H. Murphy Iron Works case is analogous to the case at bar in practically every particular. In it the plaintiff sought to prove a lien for labor and supplies furnished for the repairs on a dredge boat and the machinery thereon used in the excavation of a canal. The court held that the furnisher of these items of labor and material had no lien and that they were not covered or guaranteed by the surety bond required by the statute. By the same process of reasoning we conclude that gas or gasoline or any other kind of fuel used to propel or run the machinery of the dredge boat would not be protected by any lien and would not be guaranteed by the surety bond provided for by the statute.

The excavation of a canal and the drilling of an oil well are parallel cases under Act No. 298 of 1926. Both are constructed by machinery—the former by a dredge boat, and the latter by a drilling rig. Suppose that in each case the machinery with which the work is done is bought on a credit by the contractor. The furnisher of this machinery used in the construction or creation of this work contracted for would be protected by the vendor's lien, but not by the lien created by the act relied on in the case at bar. Suppose in each case the contractor should rent the machines. It could not be said that the owners of the machines would have the lien provided by this statute for the payment of the rent. Suppose the machinery

in each case should be operated by mule power. It could not be said that the furnisher of food for the mules would have this lien. Neither would a merchant in the case at bar have a lien for the food supply furnished to the men who worked on the drilling rig that is operated by the energy produced by the consumption of the gas furnished by the plaintiff. Counsel resorts to a very ingenious line of argument in saying that:

"It is patent that nothing goes into the drilling of a well, except the energy or labor required for the removal of the dirt therefrom, or the making of the excavation. In the instant case, gas was a material which created the energy that dug the well. The work or labor was done or performed and the well dug by means of energy created through the consumption of the gas supplied by the plaintiff. In other words, the gas itself entered directly into the well through and by means of the energy created by it. Its character was changed in the operation from a physical state to energy. The change in its character does not affect the nature of the operation."

. If this line of reasoning were adopted in every case, there would be nothing used directly or indirectly in connection with the drilling of an oil well that did not have a lien and privilege under the act, and the result would be that the fact of a lien would give no advantage. It would serve but to emphasize the correctness of the legal principle that liens are stricti juris. The John H. Murphy Iron Works case is not authority for this line of reasoning. That case holds that all *work* or *labor* or *material* that *goes into* any construction or improvement on immovable property is protected by the lien provided for in the act. It does not hold that the lien covers or guarantees the payment of the materials or tools or instrumentalities with which

this work is performed, nor does it cover the food supply consumed by the laborers which is transformed in their bodies into muscle and energy with which they are enabled to perform the work, nor does it cover gas or any other kind of fuel that is burned in a boiler and gives power to the machinery to do the work.

Counsel is also wrong in presuming that nothing goes into the drilling or construction of an oil well that is protected by the lien provided for in the statute "except the energy or labor required for the removal of the dirt therefrom, or the making of the excavation." All the casing, the derrick, the pumping apparatus, and all machinery of every kind that is necessary for the equipment of a completed oil well is covered and protected by this lien, for this is the plain letter of the statute. So counsel in his zeal to protect the gas that is consumed in the boiler of the drilling rig denies and destroys the lien that protects the material, machinery, or fixtures furnished for the completed oil well.

Counsel for plaintiff cites numerous common-law and text-book authorities. These can be multiplied on both sides ad infinitum. For instance, he cites 18 R. C. L. 918, sec. 48, in support of his contention that a lien should be allowed for "consumable supplies such as fuel." This same section, in the preceding sentence, is authority for the statement that "coal furnished to generate steam in the boilers or engines used by the contractor" is not protected by a lien. We think all these arguments and authorities are well answered and thoroughly discussed and disposed of in Red River Construction Co. v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752. On page 567 et seq. of 165 La., 115 So.

752, 753, in discussing this matter the court said:

"It is contended on behalf of the relator that the language of the statute, liberally construed, is * broad enough to embrace within its scope materials which, though not forming a constituent or permanent part of the work, are incidental to the execution of the contract. Numerous cases from other jurisdictions are cited in support of the contention. In these cases, however, the statute, contract, and bond interpreted are more extensive in their terms than our legislative act. In general, they cover material furnished * * * 'in the prosecution of the work,' 'in the execution of the contract,' or guarantee the payment of all claims against the principal 'arising out of the performance' of the contract. Even in the jurisdictions where the doctrine of liberal construction prevails, we do not find the rule to be as comprehensive as the one the relator would have us apply in construing the laguage of the statute in the case at bar. Thus, in Standard Oil Co. v. Detroit Fidelity & Surety Co. (1927) [24 Ohio App. 237] 157 N. E. 418, the issue was presented and determined under a statute reading, 'for materials furnished in the construction of the highway.' There the court said:

" 'Proceeding to construe the language in question, and giving the assured the benefit of a liberal construction thereof, we are first met with the proposition whether the gasoline and oil actually and physically enter into the composition of what is known as the construction of the highway improvement. Is the gasoline or oil an element or ingredient of the improvement? Are they elements of material, physically connected with the formation of the structure constituting the public improvement? The answer necessarily is in the negative. A disintegration of the elements composing the improvement would not reveal the presence of gasoline or oil, and consequently the gasoline and oil do not enter into the construction of the improvement, because they form no part thereof.'

"In the case of Pierce Oil Co. v. Parker, 168 Ark. 400, 271 S. W. 24, which was also a suit for oil and gasoline furnished a contractor under a statute somewhat broader

32

in its terms, the court used the following language, viz:

" 'Coal and oil while used as fuel for portable engines and machinery used in construction work, are merely an incident in the operation of the machinery, and partake of the same characteristic as it does. In other words, they are at least one step further removed from the actual work of construction, and do not have any immediate connection with the structure at any time * * * Courts must stop somewhere in the construction of these statutes. Otherwise repairs on the machinery used in the construction or the improvement, and the diminished value of the machinery and tools used in such construction, will be deemed to be lienable claims. If matters which are only remotely connected with the construction of the public improvement should be held to be lienable, the protection of the bond to the class intended by the statute would be greatly impaired. To the same effect, see City of Alpena v. Title Guaranty & Surety Co., 158 Mich. 678, 123 N. W. 536, City of Philadelphia v. Malone, 214 Pa. 90, 63 A. 539, and S. B. Luttrell & Co. v. Knoxville, L. & J. R. Co., 119 Tenn. 492, 105 S. W. 565.'

"In the case of Gary Hay & Grain Co. v. Carlson F. & D. Co. (1927) [79 Mont. 111] 255 P. 722, involving a statute similar to the one under consideration here, the court refused to hold the surety liable for oil and gasoline. The court had occasion to distinguish between the terms 'materials' and 'supplies' and defined material to be 'the substance matter of which a thing is made.' It said, quoting from ample authority, that:

" 'Following these definitions, the general rule is that, when the bond mentions only material, the surety is liable only for the payment of that which has gone into and becomes a part of the completed work.' "

If the Legislature had intended that gas used in connection with the drilling of an oil well should be protected by the lien provided for in the statute, it would have so declared in unmistakable terms. It has so declared in matters involving the construction, erection, or repair of public buildings, public roads, or public works of any character. The act covering the Red River Construction Company case, as stated above, is Act No. 224 of 1918. Since that statute was enacted, the Legislature has passed Act No. 203 of 1924, which extended lien to the furnisher of food for use and consumption by mules or other live stock used and employed in the construction, erection, or repair of public roads and public works of any character. And Act 271 of 1926 extends this same lien still further so as to include all "material or supplies furnished for use in machines used in the construction, erection, alteration or repair" of "public buildings, public roads or public works of any character." The same Legislature that passed Act No. 271 of 1926, passed Act No. 298 of 1926, the one under which plaintiff is seeking to establish its lien, and the two acts were signed by the governor and promulgated on the same day. If it had been the intention of the Legislature to establish the lien contended for, it would have done so in Act No. 298 of 1926, in plain and unmistakable language, just as it did in Act No. 271 of 1926, dealing strictly with "public buildings, public roads or public works of any character."

We therefore hold that, since the gas furnished by the plaintiff to the defendant is not material furnished which entered directly into the oil well, the furnisher thereof can have no lien as provided by Act No. 298 of 1926, or any other existing law or codal provision of this state.

For the reasons assigned, the judgment appealed from is affirmed; the costs of this court and of the lower court to be paid by the plaintiff.