## No. 4264

### Second Circuit

———

## TEXAS LUMBER CO., INC., v. E. D. GREEN REALTY CO., INC., ET AL.

———

(April 5, 1932.   Opinion and Decree.)

———

Dimick & Hamilton, of Shreveport, attorneys for plaintiff, appellant.

G. Randell Whitmeyer, of Shreveport, attorney for defendants, appellees.

McGREGOR, J.   On October 24, 1929, E. D. Green Realty Company, Inc., entered into a written contract with Kate S. Armstrong to remodel and repair her home in the city of Shreveport.  The consideration named in the contract was the sale of the adjoining lot by the owner to the contractor, who was to furnish and pay for all labor and material used in the prosecution of the work.  Accordingly, on the next day the deed to this lot was executed and signed, and on November 7, it was duly recorded in the conveyance records of Caddo parish.  In this deed the consideration was stated to be the sum of $500 cash, the receipt of which was acknowledged.  So that, as a matter of fact, the contract price for the work was paid in advance by the owner before any of the work was done.  Under the circumstances, the owner, Kate S. Armstrong, did not expect to be called upon to pay any of the bills either for material or labor.

Approximately all of the material for the job was furnished by the Texas Lumber Company, Inc., the plaintiff herein, and nothing was paid on the bill by the contractor, E. D. Green Realty Company, Inc.   When the plaintiff began to realize that it was going to have trouble in collecting from the contractor for the material it had furnished, it prepared an itemized statement showing everything which it claimed to have furnished and delivered for this job.  Attached to this statement was an affidavit, which (1) set forth the total amount of the bill, (2) described the lot on which the owner's house was situated, and (3) claimed the lien and privilege provided by law in favor of the furnisher of materials.'  This affidavit, without the statement of the account, was

duly recorded in the office of the recorder of mortgages for Caddo parish.

The account as stated shows an alleged indebtedness of $308.75; the first item is dated December 12, 1929, and the last April 15, 1930. This suit was filed against both the contractor and the owner on December 3, 1930. Judgment is sought against the two in solido, and in addition it is sought to have recognized a lien and privilege against the owner's building and the lot on which it is situated.

The contractor made no appearance or resistance to the suit, and allowed judgment to go against him by default. The owner, however, filed an answer and denied all the allegations of the petition in so far as it sought judgment against her. She alleged specially that the contractor alone was bound for the payment of the labor and material used in remodeling and repairing her home, for the reason that she had paid him in full and in advance by transferring to him a certain lot of ground which is described and which was adjacent to her home.

The case was first tried and submitted on March 10, 1931. On March 18 it was re-opened ex proprio motu by the trial judge, and further evidence was adduced on April 16, 1931. As a result of this trial, the demands of the plaintiff as against the owner were rejected, and judgment was signed accordingly. On October 13, 1931, the case was again re-opened on motion of counsel for the plaintiff, and at the end of this trial the original judgment was reinstated. From this final judgment the plaintiff has appealed.

## OPINION

Under the terms of the contract between the contractor and the owner, both defendants herein, the contractor was bound for the payment of all bills of every kind in connection with the contract. The owner cannot be held bound for the payment of any part of the material or labor used unless it can be shown that, by complying with the provisions of section 12 of Act No. 298 of 1926, plaintiff has acquired a lien and privilege against her home and the lot on which it is situated. When plaintiff sought to prove its lien and privilege by introducing a certified copy of the affidavit asserting its lien, which had been duly recorded, and a copy of the itemized statement which had been filed with the affidavit, but which had not been recorded, counsel for the owner assumed the position that no lien had been created on account of the failure to record the account as well as the affidavit. This is urged in the brief, but because of the conclusion we have reached upon another phase of the case it is not necessary to discuss it.

The last item charged on the account as made up is dated April 15, 1930, and the affidavit was duly recorded on June 12, following; so that the recordation was made within the sixty days provided by law if that last item was delivered to the premises of the owner and used in any portion of her home. On the trial of the case, the owner denied any knowledge of the material described in this last invoice and denied that it was delivered to her premises for this job on the date named, or at any other time. The entire case is admitted to hinge upon the proof of this invoice and its delivery to, and use upon, the owner's premises.

In support of its contention as to the delivery and use of the material described in this disputed invoice of April 15, plaintiff produced several witnesses. The disputed invoice consists of six pieces of lumber alleged to have been sold and delivered for building the front steps of the house. They were two inches thick,

twelve inches wide, and twelve feet long. E. M. Ellington, secretary-treasurer of the plaintiff company, testified that the entire statement was correct, and that the material listed in this last-named invoice was loaded on the date named and sent by truck to the owner's home to be used by the contractor. Jim Jacobs, the truck driver, testified that he delivered this same material as directed, and that the owner received it in person and signed the office copy of the invoice in person and in his presence. The invoice has the name "Kattie Armstrong" written in pencil at the bottom. Rolla Jackson, a carpenter who worked on this job for the contractor, testified that he built the front steps of the house, but cannot say it was the last bit of work done on the job. He swears, too, that the steps were built of material similar to that described in the invoice. This constitutes all the proof submitted by the plaintiff on the genuineness and correctness of the disputed invoice of April 15.

The defendant herself took the stand and testified that during the remodeling of her home she rented a room from one of her neighbors, but after the work had been entirely completed she moved back in her home on April 7. In this statement she is so completely corroborated by several witnesses that could not be mistaken in their testimony it is unnecessary to discuss it. We consider it an established fact that she did move on the said date of April 7, eight days before it is alleged that the disputed material was delivered and used. She swears positively that no material was delivered and no work done after she moved back. In this statement she is corroborated by several of her neighbors and friends. This testimony, of course, is negative, and is not necessarily conclusive. The owner is illiterate and can neither read nor write. She cannot sign her name. It was satisfactorily proved that she always signs her name by making her mark in the usual way. And yet, Jim Jacobs, plaintiff's truck driver, testified that the signature which is at the bottom of the delivery ticket was made by her in his presence. This part of his testimony is therefore absolutely false, and, applying the doctrine of falsus in uno, falsus in omnibus, we cannot believe him when he says he delivered the six pieces of lumber as he says he did. Another strong corroborating circumstance brought out in the cross-examination of the plaintiff's witness, Rolla Jackson, is that he says that he finished the steps and completed the entire job and left it definitely and finally before the owner, Kate S. Armstrong, moved in. It is conclusively shown that the owner moved in on April 7. The irresistible conclusion, therefore, is that the steps were built and completed before that date, and could not have been built of material alleged to have been delivered on April 15. Furthermore, this witness has absolutely no knowledge of the delivery of the six pieces of lumber.

Plaintiff can have no claim against the owner or lien upon her property unless it can prove the creation of this lien in strict conformance with the provisions of the law. In other words, unless the evidence of its claim was recorded within sixty days after the date of the last delivery of material upon the owner's premises it has no lien or claim against her or her property. It has failed to prove the delivery of the invoice dated April 15. The next invoice, just before the disputed one, is March 14, 1930, which is over sixty days prior to the recordation of plaintiff's claim. Therefore it cannot be said that any lien has been created against the owner's property. Liens are stricti juris and in derogation of common right, and must be strictly construed against the lienor. Lawrence

v. Wright et al., 11 La. App. 703, 124 So. 697.

In their brief counsel for plaintiff and appellant say:

"It is not necessary that appellant prove that the material was actually used in the building, evidence of the fact that the material was delivered upon the premises where the work was going on is sufficient."

They say:

"This question has been definitely settled by the jurisprudence of this state upon numerous occasions."

And in support of their contention they cite the cases of Haynesville Lumber Co. v. Casey, 165 La. 1066, 116 So. 559, 560, and Graphic Arts Building Co. et al. v. Union Indemnity Co. et al., 163 La. 1, 111 So. 470. In these cases the liability of an owner was not involved. The liability asserted was against the contractors and their sureties. In the Haynesville Lumber Company case, the court said:

"In a case of the furnisher of materials, quoad the contractor and his surety, it is not required that the furnisher of materials should follow up every load of lumber sold to the contractor and delivered to his driver for use in the construction of a building and to see that all of such lumber actually went into the construction of the building. We so held in the case of Graphic Arts Bldg. Co. v. Union Indemnity Co., 163 La. 1, 111 So. 470."

In announcing the same doctrine in the Graphic Arts Building Company case, the court said:

"The question *might be different* if this was a contest between the *owner* and the *furnisher* of *materials*, with the latter claiming a *privilege* on the *building*." (Italics ours.)

Counsel contend that plaintiff made out a prima facie case by the testimony of the shipping clerk, who billed the material out and saw it loaded, and of the driver of the truck, who testified that the material was delivered on the premises of the owner, and it is therefore necessary that the owner prove that the material was taken away from the premises. The answer to that argument is that plaintiff's prima facie case was destroyed without the necessity of showing any removal of the material from the premises. The truck driver is so thoroughly discredited his testimony is of no effect, and the shipping clerk knows nothing except that the material was loaded. It is not proved that a single foot of the material alleged to have been delivered on April 15 was used in any part of the building. The carpenter that built the steps swears that he built them before the owner moved back, and it is conclusively proved that she moved back on April 7. Another very significant fact is that there were six pieces of lumber in the disputed invoice, containing seventy-two lineal feet, when only fifteen feet of this kind of lumber was needed for the steps. It is unreasonable to suppose that this lumber was ordered and delivered upon the owner's premises for building three little steps.

The trial judge gave the plaintiff every opportunity to prove its case. There were three separate trials when plaintiff was afforded every opportunity to produce testimony. After a careful consideration of all this testimony, the taking of which extended over many months, and after having heard all the witnesses testify and having observed them during the trial, the trial judge found the facts to be against the plaintiff and rendered judgment dismissing its demand as against the owner. Not only do we find no manifest error in his findings, but we consider him eminently correct.

For these reasons, the judgment appealed from is therefore affirmed, with all costs.