Frank A. Blanchard is, and for a number of years has been, the owner of Lot 40 of the Ernest Subdivision, Shreveport, Caddo Parish, Louisiana.
On July 7, 1939, he entered into a written contract with J.H. Harris, Gertrude Harris and Ida Hollis, under which those persons agreed to buy from him and he obligated himself to sell said described lot, together with the house situated thereon, for a total consideration of $1,250. The agreement further recited that $50 of said amount was paid in cash, and that the purchasers would thereafter pay $15 each month until one-half of the purchase price had been paid, at which time they would receive title to the property and "give a vendor's lien mortgage for the remaining amount due." Title, however, was never passed.
Later the said J.H. and Gertrude Harris and Ida Hollis orally authorized their relatives, Clarice Taylor Sane and Richard Sane, to effect the repairing and remodeling of the mentioned house.
The Sanes, pursuant to this authority and also acting for themselves as they planned to live in the dwelling, executed *Page 321 
a written contract on October 6, 1940, with one Antonio Maniscalco in which the latter agreed to undertake the desired improving, furnishing all labor and materials, for the sum of $1,250. This writing was not recorded in the mortgage records of Caddo Parish, Louisiana.
Maniscalco, in discharging his agreement, purchased from the Yellow Pine Lumber Company, a partnership domiciled in Hall Summit, Louisiana, building materials of the value of $792.58, and used them in the house's remodeling; but he failed to make payment therefor.
Within sixty days after the date of the last delivery of such materials the Yellow Pine Lumber Company caused to be recorded in the mortgage records of Caddo Parish an affidavit of its claim; and several months thereafter it instituted this suit against Maniscalco, Clarice Taylor Sane, Richard Sane and Frank A. Blanchard for the purpose of obtaining the enforced collection of the account. J.H. Harris, Gertrude Harris and Ida Hollis were not cited.
Plaintiff, in its petition, demanded judgment in solido against the named defendants for the full amount of the claim, together with recognition and enforcement of an asserted lien and privilege on the above described lot and improvements.
After the joining of issue and a trial of the merits, plaintiff recovered a personal judgment against Maniscalco for the sum claimed; but its demands respecting the other defendants and the asserted lien and privilege were rejected.
This appeal is prosecuted by plaintiff from that portion of the judgment which rejected its demands. Maniscalco, who was condemned to pay the indebtedness, did not appeal; hence, the demands as against him are not before us for consideration.
The evidence conclusively shows that the materials furnished by the Yellow Pine Lumber Company and used in the construction of the improvements were sold exclusively to Maniscalco. No one else was a party to the transaction. Therefore, plaintiff is entitled to a judgment affecting only that debtor unless it has additional rights, as a furnisher of materials, that are afforded by statute.
The latest expression of our Legislature on the subject in question is Act 298 of 1926. In two instances named therein, the furnisher of materials, when written evidence of the claim is timely recorded, is granted a lien and privilege on the improved property and also a personal right of action against the owner. Both are found in Section 12 of the Act. One of these is where the owner, either personally or by an authorized agent, undertakes the actual work of construction, and the other is where the improvements are made by him through a contractor and the contract therefor has not been timely recorded.
It is disclosed by the record that Mr. Blanchard, the owner of the property, had nothing whatever to do with the construction of the work. It was not attempted by him personally or through an agent or a contractor. In fact he had no knowledge that the repairing and remodeling of the house was being undertaken until the work was almost completed, at which time he ordered it stopped. Consequently, he can not be held personally responsible for the materials sold to Maniscalco, nor can his property be burdened with a lien to secure payment of the indebtedness.
Civil Code, Article 508, is cited and relied on by plaintiff's counsel to show liability on Blanchard's part. It is clearly inapplicable. That codal provision deals with the rights of an owner with reference to improvements made on his property with materials of a third person. This plaintiff is not the third person therein contemplated. It did not own the materials when the work was performed. They belonged to Maniscalco, he having previously purchased them from plaintiff.
It is also argued by such counsel that under the principles of equity, considering that the property has been benefitted by the materials used, Blanchard and his property should be held responsible. The answer to this is that the mentioned Act 298 of 1926, which is the only basis for the existence of a lien and privilege and for a personal right of action against one who did not purchase the materials, is in derogation of common rights and must be strictly construed; and it cannot be extended by analogy or implication or through consideration of equity. American Creosote Works v. City of Natchitoches, 182 La. 641, 162 So. 206; Shreveport Armature Electric Works, Inc., v. Harwell et al., La.App., 172 So. 463.
With reference to the demands made by plaintiff against Clarice Taylor *Page 322 
Sane and Richard Sane, who did not own the land but who contracted with Maniscalco for the work's construction, consideration must be given to Section 11 of said Act 298 of 1926. This section provides in part: "Where any work as hereinabove set forth, is done or [on] buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds, if there is one, or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto; * * *."
The quoted provision is similar to one found in Section 3 of Act 139 of 1922, except that to the former act there has been added the clause reading: "then he shall be subject to all the obligations that are made incumbent on the owner by this act"; and from it there has been omitted the words, "usufructuary or otherwise."
These two changes in the former law are indicative of an intent on the part of the Legislature, through said Section 11, to impose on a person who improves property not belonging to him the same personal obligation for the materials furnished as is placed on the owner by the act, irrespective of the kind of right of occupancy that he enjoys; but as to the created lien, it should be effective only when the right of occupancy of such person is that of a lessee.
The Sanes, who caused the construction of the improvements, were not lessees of the owner Blanchard; hence, no lien or privilege was effective. But they do carry the obligation imposed on the owner by the act, and under Section 12 thereof they are personally responsible for the indebtedness. As before shown that section provides for personal responsibility on the part of the owner when he fails to record his agreement with the contractor and when written evidence of the material claim has been timely filed. There was no recordation of the written contract between the Sanes and Maniscalco, and plaintiff properly and timely filed evidence of its claim.
Therefore, for the reasons assigned, the judgment is reversed and set aside only insofar as it rejects plaintiff's monied demand against Clarice Taylor Sane and Richard Sane, and those defendants are now condemned to pay to plaintiff, in solido with Antonio Maniscalco, the full sum of $792.58 with 5% per annum interest thereon from December 10, 1940, until paid and all costs of suit in the district court; in all other respects that part of the judgment appealed from is affirmed. Costs of this appeal shall be paid by said defendants Clarice Taylor Sane and Richard Sane.
DREW and TALIAFERRO, JJ., concur.