This is a suit wherein the plaintiff, an architect, seeks to recover the sum of $592.40, the balance alleged to be due to him for supervision of the construction of an addition and repairs to a commercial building owned by the defendant on Third Street in the City of Baton Rouge, and also the construction of a shed adjoining the said building.
Plaintiff alleges that he was employed by the defendant to draw plans and specifications for and to supervise the aforesaid construction work at a fee of 3 3/5% of the cost of construction for the drawing and preparing the plans and specifications for the said building and shed, which plans and specifications were accepted by the defendant and thereupon the defendant, on June 7, 1934, entered into a written contract with one Robert Thibodeau, a contractor, for the construction of the said building and repairs to the commercial building for the price and sum of $23,770.91, and for the construction of the shed for the price and sum of $1,010.56, making the total costs of construction the sum of $24,781.47; that he supervised the construction of the building and the shed; that the construction of the building was completed and accepted by the defendant on September 25, 1934. His fee for drawing the plans and specifications amounted to the sum of $892.13 and his fee for the supervision of the construction is the sum of $594.76, making a total compensation of $1,486.89; that defendant has paid him his fee for the drawing of the plans and specifications and $2.36 on his fee for supervision of construction, leaving a balance for supervision of construction the sum of $592.40, which became due on September 25, 1934. Plaintiff prays for the said sum of $592.40 with legal interest thereon from the date due, Sept. 25, 1934, until paid.
The defendant, in its answer, admitted that it had employed the plaintiff for the purposes stated in the petition and on the fee basis therein described, and also admitted having paid the plaintiff the sum of $894.49, contending, however, that it did not owe plaintiff anything. It averred that it had employed plaintiff to draw preliminary plans and specifications for the repairing of an original building, the construction of a new building to the rear, and a shed on an adjoining lot for the purpose of determining whether or not it would be to its advantage to make such repairs and construction in order to lease the property to a prospective lessee, the total cost, however, not to exceed $20,000. Plaintiff complied with its request, and the prospective plans were submitted to a contractor, who submitted a bid to the amount of $21,200; that relying upon the prospective plans and the bid of the contractor, it entered into a ten years' lease with the lessee. Thereafter, plaintiff was ordered to finally draw plans and specifications and to call for bids for the construction. On April 30, 1934, bids were received and Mr. Thibodeau was the successful bidder at the sum of $21,100. It developed thereafter that plaintiff was unable to obtain a building permit from the City of Baton Rouge, and his plans and specifications had to be altered to meet the city's requirements. Defendant then had to consider either the abandonment of the construction and submit itself to a suit for damages by his lessee or enter into a contract *Page 65 
for the construction of the building at an advance sum, say, $24,781.47, or an increase of $3,681.47. It charges the plaintiff with negligence in not originally submitting plans and specifications in conformity with the Building Code of the City of Baton Rouge. It reconvened for judgment in its favor in the sum of $3,681.47, as damages.
The result of the trial was a judgment in favor of plaintiff as prayed for, save as to the interest which was granted from judicial demand rather than from September 25, 1934. The defendant has appealed and plaintiff has answered the appeal praying that interest be allowed from September 25, 1934, the date the alleged claim was due and payable.
In the early part of 1934 the representatives of Sears, Roebuck Company were in the City of Baton Rouge with a view of opening a branch store in that city. They contacted the firm of Knox Amiss, lease brokers, for a site. Mr. Amiss contacted the president of defendant company. The president and the representatives of Sears, Roebuck Company discussed the leasing of defendant's property known as 129 Third Street, together with a lot or parcel to the rear of this property, the front of which faced North Boulevard. The defendant was willing to enter into a lease covering these two lots which involved the repair of the two-story building on the lot facing Third Street and the construction of a new building on the lot facing North Boulevard, together with the construction of an oil and tire shed immediately adjoining the North Boulevard lot but situated on some other owner's property, providing, however, the total cost of repairs and construction did not exceed the amount of $20,000. Mr. Amiss was authorized to contact an architect to prepare preliminary plans and specifications in accordance with plans and specifications furnished by the representatives of Sears, Roebuck Co., and to obtain from a reliable contractor a tentative bid or estimate for the construction thereof in accordance therewith. Mr. Amiss contacted the plaintiff, a reliable, experienced architect, to draw such preliminary sketches with instruction to turn these plans or sketches to Mr. Thibodeau, a reliable contractor, and Mr. Amiss paid the plaintiff therefor. Plaintiff had no knowledge that defendant and the intended lessee were interested in the proposed project, nor did he know of any limitation of the costs thereof or the intended use or the rental price of the property. Mr. Thibodeau, using these preliminary plans of plaintiff, submitted a tentative bid to defendant in the sum of $21,200, with the understanding that his final bid might be less. Thereafter the defendant and the representatives of Sears, Roebuck Co. entered into an agreement of lease. Plaintiff was then requested to draw up final plans and specifications and authorized to solicit bids to be received on April 30, 1934. On that day Thibodeau bid the sum of $21,100, being $100 less than his previous estimate, and was awarded the contract. However, not awaiting the issuance of a building permit by the City of Baton Rouge, the defendants, on April 30, 1934, completed the lease with Sears, Roebuck Co., obligating itself to build in accordance with the plans and specifications, which lease was finally signed by Sears, Roebuck Co. on May 23, 1934.
When plaintiff and/or the contractor applied for the building permit, the city authorities took the position that the plans and specifications did not comply with the Building Code of the city in that the repairs to the two-story building and the new construction formed one building and on that account the new construction had to be constructed with fire proof material. The chief objection was that the supporting columns, in accordance with the plans and specifications, were to be constructed of wood, while steel was required. Plaintiff took the position that each building, regardless of the fact that there was an opening from one to the other, should be considered separate and apart. He endeavored to get the permit officer, the Fire Chief and the Commission Council of the City of Baton Rouge to agree with him without avail. He endeavored to get Mr. Louis Gottlieb, defendant's secretary, to help him get the permit, but he refused. Thereafter, being unable to obtain the permit, and with defendant's authorization and consent, and without any protest of any kind on its part, plaintiff amended the plans and specifications to suit the city authorities and a permit was granted. Defendant then entered into a contract, on June 7, 1934, with Thibodeau to repair the old building and construct the annex for the price and sum of $23,770.91, the said building to be completed by October 11, 1934. The plaintiff was employed to supervise the construction. On Sept. 25, 1934, the building was *Page 66 
accepted as completed, and notice duly given of such acceptance.
In the original plans and specifications, the construction of an oil and tire shed was provided for and for which Mr. Thibodeau offered a bid of $590. A permit to construct this shed was also refused by the city authorities. Immediately after the acceptance of the building as completed, plaintiff drafted new plans and specifications for the shed, and the contract therefor was awarded to Mr. Thibodeau for the sum of $1,010.56. The authorities again refused to issue a building permit for the reason that a shed could not be built in that locality, but nevertheless the shed was constructed and accepted by defendant.
Under these facts, it is the contention of the defendant that plaintiff was negligent in the performance of his work in the drafting of the original plans and specifications and his negligence has caused it damages for which it should recover as an offset for the compensation due the plaintiff.
The plaintiff was not fully informed as to the reasons why Mr. Amiss wanted the preliminary plans and specifications. Plaintiff was furnished temporary plans and specifications or requirements by Sears, Roebuck Co. No one informed him that the building of the structure depended on any amount, nor was he informed that the rental price would depend on the amount to be expended. Nor did he know that a lease would be signed prior to the obtaining of any building permit. When he was unable, through his honest belief and efforts, to obtain the permit, he submitted the matter to defendant. Defendant did not then and there notify him of his responsibility, nor that any damage would follow, but on the contrary, authorized and directed him to alter the plans and specifications to meet the demand of the city. The defendant accepted the revised plans without objection and hired him as supervisor of the construction. He was unaware that any change met with any disapproval or mattered in the fixation of a rental price. Furthermore, plaintiff has testified, and his testimony is not disputed or contradicted, that the day before the building was finally accepted, he was paid in full his fee for the drafting of the plans and specifications without any objections or counterclaims.
Counsel for defendant cites cases which hold that an architect can be held liable in damages through lack of skill or negligence on his part in drawing defective plans, and furthermore, that an architect cannot recover compensation if he produces plans for a building which, because of municipal building regulations, cannot be erected on the lot specified. See citations in Amer.Jur. Vol. 3, page 1007, Sec. 14.
We have no quarrel with the holding of these cases. However, they are not applicable to the case at bar. Under the facts of this case, the plaintiff was not unskillful, nor did he draw defective plans. It was through no fault of his that the former plans did not meet the requirements of the City of Baton Rouge; he acted in good faith throughout. The plans and specifications under which the building was repaired and the new construction built were changed, prepared and accepted, without objection, by and on the orders of the defendant with full knowledge of the increase in cost. He was thereafter given the supervision of the construction. He diligently fulfilled all of his duties. After the building was completed, he was paid his fee for the drawing of the plans and specifications without protest or counterclaim by the defendant, and this suit is to recover his fees for supervision of the construction, and to which he is entitled. The demand, in reconvention, of the defendant is based on plaintiff's negligence. Having failed to prove negligence on the part of plaintiff, its demand cannot be allowed.
The appellee's answer to the appeal questions, as before stated, the trial court's decree regarding the imposition of interest.
Civil Code, Article 1938, states that, — "All debts shall bear interest at the rate of five per centum * * * from the time they became due, unless otherwise stipulated."
The record reveals that the building as repaired and the construction of the annex were completed and accepted by the defendant on September 25, 1934. Plaintiff's employment came to an end on that date. In the absence of any stipulation or proof of custom to the contrary, a claim for his compensation is due upon completion of the service. In fact, the day before, he was paid his compensation for the drawing of the plans and specifications and a part of his compensation for his supervision of the construction. Therefore, interest is due thereon from September 25, 1934, and not from judicial demand. See Friede v. Myles Salt Co., Ltd., La.App., 177 So. 105. *Page 67 
For the reasons assigned, the judgment appealed from is amended by the allowance of legal interest from September 25, 1934, until paid, and as thus amended, the judgment is affirmed.