180 So.2d 882 (1965)
Corrie C. PENNINGTON, Plaintiff-Appellee,
v.
Thomas CAMPANELLA, Defendant-Appellant.
No. 6474.
Court of Appeal of Louisiana, First Circuit.
November 16, 1965.
Rehearing Denied December 21, 1965.
*883 Warren L. Mengis, of Cole & Mengis, Baton Rouge, for appellant.
Sylvia Roberts, of H. Alva Brumfield, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
Plaintiff, Corrie C. Pennington, brings this action against F. O. Jordan, d/b/a *884 River Jordan Pools, and Thomas Campanella to recover the sum of $6,659.63, plus $25 for preparation and recordation of a lien under R.S. 9:4801 et seq. After trial of this matter in the lower court judgment was rendered in favor of the plaintiff and against the defendant, Thomas Campanella, in the amount of $1,913.63, together with legal interest from date of judicial demand until paid. Both parties appeal.
For the purpose of brevity, Corrie C. Pennington will most of the time be referred to as plaintiff; Thomas Campanella as defendant; and F. O. Jordan, d/b/a River Jordan Pools, as Jordan.
In July, 1956, a contract was entered into between Campanella and Jordan for the construction of a swimming pool by Jordan on home property of the defendant in Baton Rouge. Within a few days after this contract was entered into Jordan entered into a verbal contract with the plaintiff, a masonry contractor, for the construction of the pool on a cost plus basis. It appears that the plaintiff had never before built a swimming pool and for that reason was not interested in making any commitment to Jordan on a construction contract other than on the basis of cost plus ten. Under the contract the plaintiff was to furnish all labor and material and Jordan was to pay him the cost of all such material and labor plus ten per cent.
Plaintiff built the pool and a short time later filed a labor and materialman's lien against defendant's property after he had not been paid by Jordan. Then he instituted this proceeding to have his lien recognized and to recover the sum of $6,659.63, plus $25 to cover the cost of filing the lien. This amount was later reduced by plaintiff in his testimony to the sum of $4,924.26. Defendant answered and made a reconventional demand against plaintiff asking for $8,245, basing said reconventional demand upon the allegations that he had been caused mental pain and anguish at the hands of plaintiff for failing to properly fulfill the contract to construct the pool, that plaintiff caused damage to his property, and that because of the faulty manner in which the pool was constructed, it would be necessary to remove the pool and build another one. (The latter was not done. In fact, defendant began using the pool around Labor Day of 1956, and was still using the pool when the last hearing was held in this case in March of 1963.)
After answering plaintiff's petition, Jordan also reconvened. He alleged the same defects in construction as did defendant; and he further alleged that he contracted with plaintiff to build the pool for $3,000, that the cost to Jordan to complete the construction according to plans and specifications was $5,495 and that Jordan had paid plaintiff $1,500; therefore he was indebted to Jordan for the sum of $3,995.
On April 15, 1960, during the pendency of these proceedings, Jordan died. His wife, a Florida resident, refused to appear in substitution for her husband in this proceeding. Hence, this suit by plaintiff to enforce his lien and to recover from defendant the amount owed on his contract with Jordan.
The judgment of $1,913.63 was reached by the trial court in the following manner: (1) Plaintiff admitted that he had made errors in calculating the amount owed to him and reduced his claim to $4,924.26, (2) for various reasons, to be discussed infra, the trial court refused to allow plaintiff to recover certain items included in his claim for labor and materials, and (3) the trial judge found that certain sums paid to Jordan by defendant served to reduce the amount owed by defendant.
Assuming arguendo that he has a cause of action to recover damages, the record does not disclose that defendant proved that any damage had been done to his property as was alleged in his reconventional demand. Therefore, this claim is denied for lack of proof.
The trial court reduced plaintiff's claim in the amount of $263.74 for the reason *885 that this amount represents the cost of certain corrective work. We hold, as did the court in Schroeter v. O'Steen (La.App. 1957) 94 So.2d 556, that it is reasonable that some mistakes may be made on any job and certain work will have to be changed in order to meet the requirements of the contract, and in the absence of an express contrary agreement, such repair work is properly included in the amount to be paid to the subcontractor on the "cost plus" job.
The trial court reduced the claim by $42 because of an apparent error in charging Jordan in one-day for 24 hours labor performed by plaintiff's son; 8 hours each on three separate jobs. Plaintiff admitted that this was an error. The amount to be disallowed is 8 hours at $1.25 per hour or $10, not $42.
The trial judge further reduced plaintiff's claim by the amount of $165.74, giving as his reason, that, "The plaintiff further testified that he had not paid the electrician, Ike Smith, whose bill was in the amount of $165.74." The invoice submitted in evidence by the plaintiff to cover the work done by Ike Smith, who is an electrical contractor admittedly hired by plaintiff in order to carry out the contract with Jordan is $165.59. The record supports the statement of the trial judge to the effect that the bill of the electrician was not paid. However, by hiring the electrician, plaintiff incurred an obligation to pay for his services. Thus, his obligation to pay the electrician became a portion of his expense in performing the contract. The amount is allowed.
Coming now to the plaintiff's claims for $169 for insurance expense and for the ten per cent profit on the total cost of the work done by him rejected by the trial judge, we find no error in this holding. The plaintiff's lien and privilege is purely statutory and is found in R.S. 9:4801 et seq., as stated supra. The courts of this state have repeatedly held that the creation of the lien and privilege in favor of the lienor, the subcontractor in this case, is in derogation of common rights and must be strictly construed in favor of the person whose common rights are affected, i. e., the owner of the property. See: Alfred Hiller Co. v. Hotel Grunewald Co. (1920) 147 La. 129, 84 So. 520; Cole v. Schexnadire (1927) 163 La. 132, 111 So. 651; Casey v. Allain (1929) 9 La.App. 725, 120 So. 420; Price v. Lee (1929) 11 La.App. 291, 123 So. 458; Lawrence v. Wright (1929) 11 La. App. 703, 124 So. 697; Fowler Commission Co. v. E. J. Deas & Co. (1930) 13 La.App. 141, 127 So. 456; Southern Gas Line v. Dixie Oil Co. (1931) 16 La.App. 26, 133 So. 181; Conservative Homestead Ass'n v. Boyle (1931) 172 La. 878, 135 So. 663; Texas Lumber Co. v. E. D. Green Realty Co. (1932) 19 La.App. 585, 140 So. 828; Morehouse Lumber & Building Material Co. v. Jacob & Walker (1932) 177 La. 76, 147 So. 504; Callender v. Marks (La.App. 1936) 166 So. 891; Yellow Pine Lumber Co. v. Maniscalco (La.App.1942) 9 So.2d 320; Griffith v. Williams (La.App.1944) 19 So.2d 277; Hughes v. Will (La.App. 1948) 35 So.2d 241; Clarke v. Shaffett (La. App.1948) 37 So.2d 56; Graeme Spring & Brake Service, Inc. v. De Felice (La. App.1957) 98 So.2d 314; Lumber Products, Inc. v. Crochet (1963) 244 La. 1060, 156 So.2d 438; Kaplan v. Pettigrew (La.App. 1963) 150 So.2d 600. From a plain reading of R.S. 9:4801 there is no provision made therein for the creation of a lien or privilege in favor of a subcontractor for any amount expended by him in securing insurance or for his profit in such a case as the one before us herein.
Plaintiff's claim was further reduced upon the trial judge's finding that $1,000 of $3,100 paid by defendant to Jordan, should be applied to Jordan's contractual indebtedness to plaintiff. The plaintiff contracted with Jordan to build three swimming pools; one for a man named Henderson, one for defendant, and one for A. M. Martin. The Martin pool was not finished by plaintiff and the record shows that Jordan paid plaintiff the sum of $1,879.78 for his work on that pool. Jordan *886 made payment to plaintiff by check on four occasions; one check for $500 admittedly applicable to the Martin pool, and another check for $1,379.78 which is also admittedly applicable to the Martin pool. The two other payments made by Jordan to plaintiff were: $1,000 by check dated August 17, 1956, and $1,000 by check dated August 19, 1956. On one occasion plaintiff was working on all three of the pools simultaneously. He was paid in full for the work done on the Martin pool on September 20, 1956. Work continued on the defendant's pool until around September 25, 1956. While the record is not clear as to the exact date, it is indicated with sufficient certainty that the work was completed on the Henderson pool prior to the date on which the last work was done on the defendant's pool. The work to be done on the Henderson pool was contracted on a cost plus ten per cent basis, and plaintiff's invoices indicated that the total cost of labor and materials on the Henderson job was $2,465. Such being the case the amount paid by Jordan to plaintiff would not be sufficient to satisfy Jordan's obligation to him under the Henderson contract. The trial court gave as its reason for applying the $1,000 payment by Jordan to the Campanella contract that defendant on August 17, issued a check for $1,500 to Jordan and on the same day Jordan issued a check to plaintiff in the amount of $1,000 and there scribbled on the back of the check "Pennington on Campanella." The scribbling was not placed there by plaintiff. The scribbling was on the back of the check beneath endorsement. Plaintiff denied that he had received any payment for work done on the Campanella pool. He also testified that the handwritten notation was not his writing.
There is no expression in the record as to any agreement between Jordan and plaintiff as to time when he would be paid for the several jobs being done for Jordan. LSA-C.C. Art. 1963 provides:
"When the intent of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision, which the parties had no right to modify or renounce."
Then LSA-C.C. Art. 1964 provided:
"Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources."
The law as to when payment is due in a contract situation is expressed in Grosz v. Baton Rouge Realty Co. (La.App.1954) 17 So.2d 63 (writs denied). In this case the Court was confronted with the question as to when the interest was to begin to run on an amount due to an architect for work which he had done in connection with the construction of a building. The court said:
"In the absence of any stipulation or proof of custom to the contrary, a claim for his compensation is due upon completion of the service."
From the preceding case and the Civil Code articles above quoted, it is necessary to resort to legal order of imputation of payment in order to decide to which obligation the money paid by Jordan to plaintiff is to be applied.
It is provided in LSA-C.C. Art. 2166 that:
"When the receipt bears no imputation, the payments must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due; otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable.
If the debts be of a like nature, the imputation is to be made to the debt that has been longest due; if all things are equal, it is proportionally."
*887 All of the payments made by Jordan to plaintiff were made prior to the completion of the work on the defendant's pool, and payment for the work done on his pool, under the authorities mentioned above, was due when the work had been completed. In Cohen v. Toy (La.App.1963) 150 So.2d 605, the court said:
"When a debtor, owing a creditor several debts, makes a payment without directing its application, the law will impute the payment to a due debt in preference to one not due, or is prescribed." (Authorities cited.)
Any party relying upon an imputation of payment contrary to that provided in LSA-C.C. Art. 2166, bears the burden of proving that the payment is to be imputed in a manner other than that prescribed by law. Hattiesburg Manufacturing Company v. Pepe (La.App.1962) 140 So.2d 449. Defendant has failed to bear the burden of proof imposed upon him in this respect.
The trial judge further erroneously reduced plaintiff's claim by an amount which he determined to be a sufficient amount to correct the existing defects in the swimming pool. The trial judge made a personal inspection of the pool, apparently while he had the case under advisement, between the hearing and the rendering of the judgment. He said:
"Unfortunately the court does not have a breakdown as to the estimated costs of the various defects and can only estimate. Both defendants originally claimed $4,000 to put the pool in usable condition. The only evidence offered was the testimony of Mr. A. H. Wilson of Southern Gunite Company who estimated the sum of $5,350. However, this would amount to a complete overhaul of the pool.
"The court will allow $1,000 which is half of the defendant's demand, but should be adequate to repair the defects observed by the court. This amount added to the $1,000 payment makes a total of $2,000 that should be credited to Dr. Campanella."
The court cannot take judicial notice of things other than what is common knowledge and human experience of every person of ordinary understanding and intelligence. Miranne v. State Farm Mutual Automobile Insurance Company (La.App. 1951) 54 So.2d 538. Elba v. Thomas (La. App.1952) 59 So.2d 732. Bourg v. Aetna Casualty and Surety Company (1955) 77 So.2d 131.
Defendant has no right to have any claim he may have had under the contract with Jordan offset against plaintiff's claim under the lien. There is no privity of contract between plaintiff and defendant. Allen and Currey Manufacturing Co. v. Shreveport Water Works Co. (1905) 113 La. 1091, 37 So. 980, 68 L.R.A. 650; McClendon v. T. L. James & Co. (5 Cir., 1956) 231 F.2d 802.
It is provided in LSA-C.C. Art. 2207, that:
"When two persons are indebted to each other, there takes place between them compensation that extinguishes both the debts, in the manner and cases hereinafter expressed."
Entities cannot offset against one another debts which are not mutually owed and mutually demandable. See: Ben C. Penn and Son v. Thompson Packers, Inc. (La. App.1946) 169 So.2d 259.
For the foregoing reasons the judgment of the trial court is amended and judgment is rendered in favor of Corrie C. Pennington and against Thomas Campanella in the sum of $4,309.87, together with legal interest from date of judicial demand until paid. All costs to be paid by the defendant.
Judgment amended and affirmed.