| tPETERS, Judge.
This litigation began as an effort by Sears, Roebuck and Co. (Sears) to collect a credit card balance from Gerald G. Patterson. As a part of its collection efforts, Sears obtained a judgment garnishing Patterson’s wages. Pursuant to that judgment, Patterson’s employer remitted a portion of his wages to Sears in satisfaction of the debt. Ultimately, Patterson filed a reconventional demand against Sears, asserting that Sears had seized more of his wages than necessary to satisfy his debt. After trial, the trial court found that Sears had seized more than required to satisfy its claim against Patterson and rendered judgment awarding Patterson the overpayment, general damages, and attorney fees. Sears has appealed that judgment. For the following reasons, we reverse.
DISCUSSION OF THE RECORD
The basic facts are not in dispute. As of January 28, 1989, Gerald Patterson and l2his wife, Joanne,[1] were delinquent on their Sears credit card account to the extent of $3,839.96. A demand letter by Sears resulted in sporadic payments by the Pattersons, but the amount of the payments was not sufficient to pay the accumulating interest. On April 4, 1991, Sears filed suit on the debt in Lafayette City Court. The Pattersons did not answer the suit but continued to make sporadic payments. Sears obtained a default judgment against the Pattersons on December 16,1992, “in the full sum of ... $3,839.96 ..., together with interest of 18% per annum from January 28, 1989, until paid, plus reasonable attorney’s fees of 25% of the aggregate amount due and for all costs of these proceedings, less applicable credits.”
The Pattersons made a few more sporadic payments, but, as before, the payments were not even sufficient to pay the accumulating interest. On January 6,1995, Sears obtained a judgment ordering the garnishment of Gerald Patterson’s wages. This judgment resulted in Patterson’s employer, BJ Services Company, U.S.A., withholding $466.25 from Patterson’s check each pay period and remitting that sum to the Lafayette City Marshal approximately every two weeks. These payments continued for twenty pay periods, during which time the marshal collected $8,925.00. The last payment in this amount was made in the second pay period of October 1995. Believing that the debt had been fully satisfied, Sears apparently instructed Patterson’s employer not to withhold any additional sums.
However, in January of 1997, at the instruction of Sears, Patterson’s employer again began withholding funds from his check and remitting them to the Lafayette City Marshal, but this time in the amount of *715 $153.87. BJ Services continued to withhold Rfunds from Patterson’s check through March of 1997.[2]
The appeal before us results from a recon-ventional demand filed by Patterson on March 17, 1997, in which he asserted that Sears had wrongfully seized his wages. Specifically, he asserted that Sears continued to garnish his wages after the debt had been paid in full. In addition to the return of the alleged overpayment, Patterson sought recovery for mental anguish, for damage to his credit reputation, and for loss of use of the seized funds. Patterson also requested that a preliminary injunction issue enjoining further garnishments by Sears, but this issue became moot with Sears’ voluntary dismissal of the garnishment on April 14, 1997. Additionally, before the reconventional demand was brought to trial, Sears acknowledged an overpayment of $96.44, and on May 14, 1997, Sears refunded that amount to Patterson.
At the trial on the reconventional demand, the trial court determined that Sears had been overpaid through the garnishment in the amount of $451.03. The trial court rendered judgment in favor of Patterson and against Sears in the amount of $354.59,[3] together with legal interest from the date of judicial demand. Additionally, the trial court awarded Patterson $100.00 in general damages pursuant to 15 U.S.C. § 1692k and $2,600.00 in attorney fees. Sears appeals this judgment, alleging numerous assignments of error. Patterson has answered the appeal, seeking legal interest on the attorney fee award and an increase in attorney fees for the additional services rendered in response to Sears’ appeal.
OPINION
|4We need only consider one of Sears’ assignments to resolve this dispute. The trial court, relying on La.Civ.Code arts. 1866 and 1868, determined that payments should be credited first to interest and then to principal. It further determined that only when the principal and interest were paid in full, would payments be imputed to attorney fees, court costs, and city marshal’s fees. We find this method of imputation to be erroneous.
The Louisiana Civil Code establishes specific rules governing imputation of payment in the normal obligor/obligee relationship. Unless there is an agreement to the contrary, payment on a debt that bears interest cannot be imputed to principal when there is interest due but must be imputed first to interest. La.Civ.Code art. 1866. Additionally, “[i]f several debts are due, payment must be imputed to the debt that bears interest.” La.Civ.Code art. 1868. Clearly, the original debt which arose as a result of the use of the Sears credit card was subject to these imputation rules, and the payments made on the debt prior to the suit filed by Sears on April 4, 1991, should have been paid accordingly.
Once suit is filed, the rules of imputation provided for by the Civil Code must be considered with the other procedural provisions and the surrounding circumstances. The judgment rendered on December 16, 1992, awarded the amount due together with interest and also awarded Sears the right to recover the attorney fees provided for in the event of default and the right to recover the court costs incurred by filing the suit. The attorney fee and court cost awards arose because of the Pattersons’ default and represent nothing more than Sears’ out-of-pocket expenses incurred as a result of its enforcement of rights it already had under the contract with the Pattersons. As such, we do not find that these amounts constitute a separate debt as envisioned by the imputation provisions of La.Civ.Code arts. 1866 and 1868. Additionally, the six ^percent collection fee is owed to the Lafayette City Marshal, and not Sears. See La.R.S. 33:1704(A)(14).
Neither Sears nor Patterson has cited any jurisprudence which addresses the question of imputation of payments in a garnishment *716 situation. Patterson cites Union Bank of Louisiana v. Kindrick, 10 Rob. 51 (La.1845); Martinstein v. His Creditors, 8 Rob. 6 (La.1844); Shaw v. Oakey, 3 Rob. 361 (La.1842); and Hynson v. Maddens, 1 Mart. (n.s.) 571 (La.1823), as authority for the appropriate way to impute payments. While we do not disagree with the holdings in those cases, we find that they are distinguishable from the case before us because they all address prejudgment situations. Nor do we find Central Louisiana Bank & Trust Co. v. Dauzat, 539 So.2d 1306 (La.App. 3 Cir.1989); Carter’s Insurance Agency, Inc. v. Franklin, 428 So.2d 808 (La.App. 1 Cir.1982); or Pennington v. Campanella, 180 So.2d 882 (La.App. 1 Cir.1965), writ granted, 248 La. 783, 181 So.2d 782 (1966), to be applicable because they too are distinguishable from the case before us in that none of these cases addressed a situation involving a garnishment.
We conclude that the imputation of payment in the matter before us should be divided into three periods. The period from January 28, 1989, until suit was filed on April 4, 1991, is clearly governed by La.Civ.Code art. 1866. The two payments made during that period should have been credited first to interest and then to principal.
The filing of the suit gave rise to new considerations. Sears became obligated for court costs and attorney fees as a result of the Pattersons’ default. To require that Sears collect these otherwise unnecessary expenses after the satisfaction of the principal/interest obligation would be to give an advantage to the persons whose default caused Sears to incur the expenses in the first place. Thus, we conclude that funds collected during this period should be credited first to court costs. After the [6court costs are reimbursed, the funds collected should be divided between the attorney fees and the original debt. Twenty-five percent of each payment should be credited to the awarded attorney fees. The remaining seventy-five percent should be applied first to interest and then to principal.
The garnishment proceeding caused the inclusion of the six percent city marshal’s statutory fee in the payment equation. La. R.S. 33:1704(A)(14) allows this amount as a collection fee, and this payment should be considered prior to further disbursement of the garnished wages. Therefore, we conclude that payments received through the garnishment process should be credited first to the marshal’s fee and then to court costs. The balance should continue to be divided between the accumulating attorney fees and the original debt and disbursed in the same twenty-five/seventy-five percent ratio.
In reviewing the record, we find that the trial court, Sears, and Patterson reached different results in the calculation methods used. Applying the method described above, we find that Sears had not been overpaid and, in fact, dismissed its suit without having collected the full amount of the debt. Thus, we conclude that the trial court erred in awarding judgment in favor of Patterson on his reconventional demand.
DISPOSITION
For the foregoing reasons, we reverse the trial court’s judgment in favor of Gerald G. Patterson and render judgment in favor of Sears, Roebuck and Co., dismissing Patterson’s demands at his costs. We tax all costs of this appeal against Patterson.
REVERSED AND RENDERED.

. The Pattersons were subsequently divorced, and Mrs. Patterson is no longer a party to the litigation.

. This time, BJ Services Company, U.S.A. withheld funds for seven pay periods. Six of the seven withholdings were in the amount of $153.87. The seventh was in the amount of $142.60.

. The trial court actually awarded Patterson $451.03. However, Sears had previously issued a check in the amount of $96.44 to Patterson. Therefore, the amount of the award is actually $354.59 ($451.03 less $96.44).