182 So.2d 764 (1966)
Edward C. McGEE, Jr., Plaintiff-Appellant,
v.
MISSOURI VALLEY DREDGING CO. et al., Defendants-Appellees.
No. 6559.
Court of Appeal of Louisiana, First Circuit.
January 24, 1966.
Rehearing Denied February 28, 1966.
Writ Refused April 15, 1966.
Gerald F. Lofaso, Houma, for appellant.
Leonard Greenburg, Houma, for appellees.
Before ELLIS, LANDRY, REID, BAILES and F. S. ELLIS, JJ.
BAILES, Judge.
Plaintiff, Edward C. McGee, Jr., a registered land surveyor, was hired by one of the defendants, Missouri Valley Dredging Co., a foreign corporation to perform certain surveying services in connection with the construction of a twenty-four (24) inch and a thirty (30) inch natural gas pipe line in fulfillment of its contract for the construction of these pipe lines for Columbia Gulf Transmission Company. Specifically, plaintiff surveyed the pipeline crossings of the Atchafalaya River in Terrebonne and St. Mary Parishes and Wax *765 Lake Outlet and Levees in St. Mary Parish.
These services were performed from August 26, 1964, through October 7, 1964, and the total charges therefor amounted to the alleged sum of $9,374.30. No part of this amount was paid to plaintiff.
Not having received payment for these services, the plaintiff filed on November 6, 1964, in the office of the Clerk of Court of Terrebonne Parish, an affidavit setting forth the performance of the aforementioned services and the non-payment thereof by Missouri Valley Dredging Co. Plaintiff further stated in this affidavit that he was asserting a lien and privilege under the provisions of R.S. 9:4861 et seq., on all of the pipeline crossings of the Atchafalaya River and Wax Lake Outlet and levee crossings in Terrebonne and St. Mary Parishes, "as well as on all oil or gas produced from any well or wells, which oil and gas is or may be transported through the above mentioned pipelines; the proceeds thereof inuring to the working of said well or wells and on the oil and gas wells and the leases whereon same are located and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached or located on said property for the amount shown on the itemized statements marked Exhibit A and attached hereto and for the cost of recording this lien, as well as interest allowed by law and an additional ten per cent (10%) attorney's fee as provided by law."
On December 3, 1964, defendant, Missouri Valley Dredging Co. filed in the office of the Clerk of Court of Terrebonne Parish a surety bond for the purpose of bonding the lien filed by plaintiff. The proceeding is provided for in R.S. 9:4841.
The following marginal notation was made on the above described affidavit that was recorded in MOB 236, folio 615:
"By virtue of the bonding of this lien under the provisions of La.R.S. 9:4841 and by virtue of the juresprudence established in State, ex rel Pittman Bros. Construction Company vs. Watson, 1942-99 La., 633 [199 La. 623], 6 So.2d 709, this inscription is erased and cancelled. Said bond having been filed this day in this office and recorded in M.O.B. 236, folio 615, et seq. Entry No. 271033.
 December 3, 1964
 Betty A. Trahan
 By Clerk of Court"
On January 29, 1965, this suit was filed by plaintiff against the contractor and the owner of the pipeline, the named defendants herein, alleging, inter alia, that he had filed a lien against the property described hereinabove and that by reason of it being "within the power of the defendants to conceal, part with or depose of the property affected by said liens during the pendency of this action, and that your petitioner is entitled to enforce his privlege granted under R.S. 9:4861 by a writ of sequestration and thereunder the following described property was sequestered, to-wit:
"That portion of a certain 24" and a certain 30" natural gas pipe line crossing the Atchafalaya River at approximate mile 128.8 below the Mead (1950), which is situated in the Parish of Terrebonne, Louisiana, and a 30" natural gas pipe line crossing Wax Lake Outlet and Levees (this line crosses west levee of Wax Lake Outlet at approximate Levee Station 283 plus 11) in St. Mary Parish, whatever portion thereof is in the Parish of Terrebonne, Louisiana."
This matter was terminated in the trial court by a ruling adverse to the plaintiff on a motion filed by the defendants to dissolve the writ of sequestration. In this motion, the defendants contend that as a matter of law no lien or privilege is provided for the type of services rendered to *766 defendants in favor of plaintiff under the provisions of R.S. 9:4861 et seq., that even if a lien and privilege is afforded to him as alleged in his petition the lien was cancelled by the substitution of the bond, and consequently no lien or privilege now exists in his favor; and defendants aver that they are entitled to be awarded damages consisting of attorney fees in the amount of $250 for the wrongful issuance of the writ of sequestration; additionally they should be awarded the cost of the bond for the release of the lien, etc.
Upon completion of the hearing on the motion and rule to dissolve the writ of sequestration, the trial court ruled that the writ should be dissolved, the seizure thereunder and the liens and privileges filed in St. Mary and Terrebonne Parishes are cancelled, and the bond for the release of the lien furnished by defendants was ordered cancelled and erased, and finally damages in the amount of $542.15 for attorneys' fees, cost of premiums for bonds for release of the liens and charges for recording said bonds, plus legal interest thereon from date until paid.
Plaintiff appealed from this judgment.
Whatever security, if any, the plaintiff has for the services he performed, described supra, for the defendants, Missouri Valley Dredging Company must be found in the statutes of this State and specifically in Title 9 of our revised statutes.
While plaintiff contends R.S. 9:4861 et seq. provides the necessary privilege and lien for security for the labors performed by defendant, we must admit that our diligent search of the statutes fails to disclose any other for consideration.
R.S. 9:4861, omitting the portions superfluous to our consideration herein, provides:
"Any person * * * who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, has a privilege * * * on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached * * * for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection * * *"
Repeatedly the courts of this state have held that the statutes creating privileges and liens are in derogation of common rights and must be construed stricti-juris. See: Alfred Hiller Co. v. Hotel Gruenwald Co. (1920) 147 La. 129, 84 So. 520; Cole v. Schexnadire (1927) 163 La. 132, 111 So. 651; Casey v. Allain (1929) 9 La.App. 725, 120 So. 420; Price v. Lee (1929) 11 La.App. 291, 123 So. 458; Lawrence v. Wright (1929) 11 La.App. 703, 124 So. 697; Fowler Commission Co. v. E. J. Deas & Co. (1930) 13 La.App. 141, 127 So. 456; Southern Gas Line v. Dixie Oil Co. (1931) 16 La.App. 26, 133 So. 181; Conservative Homestead Assn. v. Boyle (1931) 172 La. 878, 135 So. 663; Texas Lumber Co. v. E. D. Green Realty Co. (1932) 19 La.App. 585, 140 So. 828; Morehouse Lumber & Building Material Co. v. Jacob & Walker (1932) 177 La. 76, 147 So. 504; Callender v. Marks (1936) La.App., 166 So. 891; Yellow Pine Lumber Co. v. Maniscalco (1942) La.App., 9 So. 2d 320; Griffith v. Williams (1944) La. App., 19 So.2d 277; Hughes v. Will (1948) La.App., 35 So.2d 241; Clarke v. Shaffett (1948) La.App., 37 So.2d 56; Graeme Spring & Brake Service, Inc. v. De Felice (1957) La.App., 98 So.2d 314; Lumber Products, Inc. v. Crochet (1963) 244 La. 1060, 156 So.2d 438; Kaplan v. Pettigrew (1963) La.App., 150 So.2d 600.
From his brief we set forth the plaintiff's argument in support of the alleged statutory lien.
"The provisions of lien statutes, being in derogation of common rights *767 must be considered as `stricti juris' and rigidly construed. This brings us to the statement of the ultimate issue upon which a determination of the case must rest, that is, the meaning of the pertinent provisions of the statute.
"`Any person' can only be construed to mean one thing. It applies to any individual who is entitled to file a lien on the basis of the remaining provisions of the statute. It does not exclude professional men or in any way limit the right to file a lien to common laborers or any other class. Certainly, the plaintiff in this case can be considered `any person' for the purposes of filing this lien.
"`* * * who performs any labor or service' certainly applies to a registered land surveyor who performed professional services in connection with his employment by the defendant, Missouri Valley Dredging Company. Again, the statute is not limited to laborers or furnishers of materials, but is broad enough to include any type of service as set forth within the statute.
"`* * * in the operation or in connection with the operation of an oil, gas or water well or wells' certainly applies to the services performed by Mr. McGee in connection with staking out, locating and preparing plats for a 24 inch and a 30 inch natural gas pipe line from producing wells. There is no exclusion in the statute to include this type of service and, therefore, counsel's argument that the statute does not contemplate `the kind of service alleged in his petition to have been performed by petitioner' is without merit.
"It would appear that the issue finally reduces itself to a matter of definition as to what the Legislature intended by the provision which reads `* * on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached.' Did the Legislature mean what it said, that the person who furnishes labor or services in connection with the operation or a well has a privilege on all appurtenances and other structures thereto attached? If it did, and construing the statute strictly and following the letter of the law, Mr. McGee was entitled to and has a privilege on the pipe lines which are necessarily attached to the wells. On the other hand, if the Legislature intended to restrict or limit the privilege of filing a lien on the appurtenances and structures attached to the well, why is it that the Legislature did not limit this right to certain individuals or set forth certain exclusions. There being no limitation and no exclusions, it is the position of the appellant, Edward C. McGee, Jr., that the Legislature meant what it said and that he has a valid lien on the pipe lines attached to the well."
While plaintiff does state in his argument set out above that "* * * in the operation or in connection with the operation of an oil, gas or water well or wells" certainly applies to the services performed by Mr. McGee in connection with staking out, locating and preparing plats for a 24 inch and a 30 inch natural gas pipeline from producing wells, (italics added) it cannot be seriously contended that this 24 inch and 30 inch pipeline are attached to and form a part of the "drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached" of oil, gas or water wells.
It is obvious that a 24 inch and a 30 inch pipeline are a transmission line. There is no allegation or proof in this record that the pipelines are a part of the gathering system of producing gas wells.
*768 As we understand the facts the plaintiff was hired to survey a certain river crossing and lake and levee crossings for these two pipelines that were being constructed through Terrebonne and St. Mary Parishes for the Columbia Gulf Transmission Co.
The question before us herein is res novo. We, in addition to counsel, have been unable to find a case wherein the identical question has been passed upon heretofore by any court.
The law of this State on construing statutes creating liens and privileges is succinctly stated in 53 C.J.S. Liens § 5b, to be:
"In Louisiana, privileges and liens are stricti juris; both the privileges or liens and the statutes creating them must be strictly construed. Privileges or liens can be allowed only when plainly and expressly created by statute or law, and only for those debts for which they are expressly granted; they cannot be extended by implication or analogy."
It is clearly the law of this State that the creation of a lien and privilege is in derogation of common rights and must be strictly construed in favor of the person whose rights are adversely affected by the lien and privilege. See Pennington v. Campanella (1965) La.App., 180 So. 2d 882, and the cases therein cited.
We find that R.S. 9:4861 et seq., does not cover nor was it intended to cover a situation such as presented herein. It would be an unwarranted extension of the provisions of this statute to hold that a person who performs service in the construction of a 24 inch or 30 inch gas transmission pipeline has a lien under the provisions of this statute.
Even if it were ambiguous as to inclusion of the plaintiff's predicament, we would have to resolve the ambiguity against the plaintiff as the one claiming the lien and privilege. Nor are we permitted to extend the coverage of the statute by analogy or implication, or through equitable consideration of the plight of the plaintiff who will no doubt be required to bring a personal action against the defendants in a foreign jurisdiction. See: Shreveport Armature & Electric Works v. Harwell (1937) La.App., 172 So. 463.
It occurs to us that if a surveyor who surveys a river crossing for the construction of a 24 inch and 30 inch pipeline has a lien on the gas well that produces the gas that is transmitted through these pipelines, then it would follow that every person from the well head to the consumer that had a hand in construction of the pipeline would have a lien on the gas well for any unpaid services rendered or labor performed. Clearly, to hold that the plaintiff has a lien as contended in this action would be an unwarranted and unreasonable extension of the plain provisions of the statute that does not provide for nor creates such a lien.
Having concluded that plaintiff has no lien, it follows that the writ of sequestration was improvidently issued. On a motion to dissolve the writ the defendants are claiming damages as detailed above. In addition to attorneys' fees in the amount of $250.00, defendants claim the premium on the bonds and cost of filing and recording said bonds in the amount of $6.15, or a total of $542.15. While the record is barren of any proof of the premium and filing costs, the plaintiff makes no contention or complaint of error as to the amount so we feel justified in accepting this as the correct amount.
Defendant is claiming the damages in the amount of $542.15 under authority of the provisions of LSA-C.C.P. Article 3506, which provides:
"The defendant by contradictory motion may obtain the dissolution of a *769 writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued.
"The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits."
We agree that the above quoted article of the Code of Civil Procedure permits the Court to award damages for the wrongful issuance of a writ of sequestration. The plaintiff contends that he should not be cast for these damages because of the absence of malice. We do not read in this provision of the Code of Civil Procedure the requirement of a showing of malice to recover attorney fees as damages.
There is no authority that we know of, and defendant has not referred us to any, that permits the awarding of damages for the bonding of a lien and costs of recording such bond. The awarding of damages for dissolution of a writ of sequestration is one thing provided for by express law, however, the awarding of damages equal to the premium of a bond to lift a recorded lien improvidently filed is not sanctioned in our law.
The judgment of the trial court is amended to reduce the award of damages from $542.15 to $250.00, and in all other respects it is affirmed. Plaintiff is to pay all costs.
Judgment amended and affirmed.