**Carolyn DEAN**

v.

**MARITIME OVERSEAS COR-
PORATION and XYZ In-
surance Company.**

**Civ. A. No. 90–1022.**

United States District Court,
E.D. Louisiana.

Aug. 9, 1991.

Clyde A. Ramirez, Patricia Dorothy Miskewicz, Ramirez & Miskewicz, New Orleans, La., Ivan David Warner, III, Carimi Law Firm, Metairie, La., for plaintiff.

Maurie D. Yager, Terriberry, Carroll & Yancey, New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

ARCENEAUX, District Judge.

Defendant Second Shipmor Associates ("Second Shipmor")[1] filed a motion for partial summary judgment on the law to be applied in this case. Having reviewed the memorandum in support, the opposition, and the applicable law, the court finds that state law, rather than federal maritime law, should apply to the merits of this case.

## BACKGROUND

This suit arises out of injuries allegedly suffered by plaintiff Carolyn Dean on August 31, 1989, when she breathed vapors released from the SS OVERSEAS OHIO's cargo tanks. Plaintiff filed this suit in the Civil District Court for the Parish of Orleans, State of Louisiana, on December 7, 1989. In her complaint, Ms. Dean alleges causes of action under Louisiana state law and local ordinances. Defendant removed on March 14, 1990, on the grounds of diversity jurisdiction or, in the alternative, of admiralty jurisdiction.[2]

The SS OVERSEAS OHIO, a U.S. merchant tankship, had docked at the Louisa Street Wharf in the Port of New Orleans on the morning of August 30th. Upon receiving instructions on August 31st to proceed to Jacksonville, Florida, the ship's crew began cold water washing the ship's tanks.[3] During this cold water washing, the chief mate relieved pressure within the cargo tanks on approximately three occasions by venting pressure through the high jet vent, a stack or pipe extending about eleven feet above the main deck.

Plaintiff, who lived several blocks away from the Louisa Street Wharf, noticed a gas smell sometime between 5:00 p.m. and 7:00 p.m. on the day in question. According to plaintiff, her fiance woke her up because of the gas vapors allegedly emitting from the SS OVERSEAS OHIO, and she descended the stairway of her home to leave. While attempting to leave her home, Ms. Dean, who allegedly suffers from an asthmatic condition, apparently became unconscious and sustained injuries from falling backward on the stairs.

This motion for partial summary judgment requests the court's determination on the law to be applied in this case. Second Shipmor contends that federal maritime law should govern the merits of this dispute. Plaintiff, however, argues that the court should apply Louisiana state law. In the alternative, Ms. Dean states that, even if federal maritime law should apply, state law may supplement admiralty law. The court now turns to the novel issue of whether plaintiff's fall in her home allegedly caused by emissions from a vessel on navigable waters satisfies the test for admiralty jurisdiction and, partially or com-

---

1. Plaintiff filed an amended complaint on April 22, 1991, replacing Maritime Overseas Corporation with "Second Shipmoor (sic) Associates, Inc." as the defendant in this action. In so doing, plaintiff recognized Second Shipmor, rather than Maritime Overseas Corporation, as the actual owner of the SS OVERSEAS OHIO.

2. The court has previously expressed concern over whether it could properly exercise its diversity jurisdiction. In its answer to the amended complaint, Second Shipmor admits that it is a general partnership organized under the laws of Delaware. The partners are San Jose Tankers, Inc., a Delaware corporation with its principal place of business in New York, New York, and Moran Tankship No. 2, Inc., a Delaware corporation with its principal place of business in Wilmington, Delaware. Plaintiff is a citizen of the Parish of Orleans, State of Louisiana. The parties also have not contested that this controversy involves an amount in controversy exceeding $50,000.

3. Defendant informs the court that the SS OVERSEAS OHIO possesses an inert gas system and a crude oil washing system. The inert gas system apparently serves to reduce the oxygen content of the cargo tanks. The crew uses the inert gas system to purge the oxygen and, in the process, emits hydrocarbons into the atmosphere. At all relevant times, defendant alleges that the inert gas system had been in good operating condition and had passed an inspection by the U.S. Coast Guard in May 1989.

pletely, preempts the application of state law.

## DISCUSSION

### 1. The "Savings to Suitors" Clause

The United States Constitution provides that the judicial power of the federal courts extends to "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. Congress has codified this grant of federal jurisdiction in Title 28, United States Code, Section 1333, which provides in part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333 (Supp.1989); *see* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3672 (1985 & Supp.1991). The federal courts, therefore, have exclusive jurisdiction over all cases involving purely maritime matters. The "savings to suitors" clause, however, reserves the right of a plaintiff to pursue nonmaritime remedies in all other cases.

■ This clause, in general, provides for the application of common law remedies in all cases where such law is competent. One commentator has noted that,

> Since the common law is competent in all cases where the suit is *in personam,* a plaintiff in such causes may elect either to proceed in admiralty or to bring an ordinary civil action, either at law in state court or in a federal district court under federal diversity jurisdiction (or some other basis of federal jurisdiction). This rule is subject to two qualifications. There is exclusive admiralty jurisdiction over proceedings *in rem,* because the *in rem* action was not known to the common law. Moreover, Congress, by statute, has conferred exclusive admiralty jurisdiction upon the federal courts in

suits under the Limitation of Shipowners' Liability Act, the Ship Mortgage Act, the Suits in Admiralty Act, and the Public Vessels Act.

T. Schoenbaum, *Admiralty and Maritime Law* § 3–13 (Prac. ed. 1987) (footnotes omitted); *see* G. Gilmore & C. Black, *The Law of Admiralty* § 1–13 (1975). The *in personam* suit, therefore, provides plaintiffs with a choice of forum either in state court or federal court, unless preempted by a federal statute. Moreover, the "savings to suitors" clause prohibits a defendant from removing a case from state court solely on the basis of maritime jurisdiction unless the suit falls under the federal courts' exclusive maritime jurisdiction.[4]

■ The "savings to suitors" clause, however, does not preempt the application of federal maritime law where the claim arises under admiralty law—no matter whether the suit has been brought in federal court or state court. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 359–60, 82 S.Ct. 780, 783–84, 7 L.Ed.2d 798 (1962); *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409–11, 74 S.Ct. 202, 204–06, 98 L.Ed. 143 (1953); *McCraine v. Hondo Boats, Inc.,* 399 So.2d 163, 165 (La.1981), *cert. denied,* 458 U.S. 1105, 102 S.Ct. 3483, 73 L.Ed.2d 1366 (1982). In fact, the United States Supreme Court in *Pope & Talbot* noted that, while state law may supplement federal maritime policies, federal maritime law controls rights of recovery rooted in admiralty. 346 U.S. at 409, 74 S.Ct. at 204–05; *see Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 338, 93 S.Ct. 1590, 1598, 36 L.Ed.2d 280 (1973). Further, the Supreme Court rejected the contention that a suit brought in diversity must be heard under state law. *Pope & Talbot, Inc.,* 346 U.S. at 411, 74 S.Ct. at 206. This court, therefore, remains duty-bound to determine whether plaintiff Carolyn Dean's claims arise under federal maritime law, state law, or a combination of both.

4. Maritime Overseas Corporation, the former defendant, removed this case based on this court's diversity jurisdiction. The court has noted previously that the present parties satisfy the requirements for diversity jurisdiction. *See supra* note 2. The court, therefore, finds the removal and jurisdiction to be uncontested and proper.

### 2. The "Situs" Requirement

■ The determination of whether federal maritime law should govern the merits of a case depends on the two-part test formulated in the Supreme Court's decisions of *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), and *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). In *Executive Jet*, the Court, in rejecting the strict "locality" test,[5] held that an aviation tort must occur in navigable waters (i.e., situs) *and* bear a significant relationship to traditional maritime activity to invoke admiralty jurisdiction (i.e., nexus). 409 U.S. at 268; *see Kelly v. Smith*, 485 F.2d 520, 524 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). The *Foremost Insurance* case extended the application of *Executive Jet* and its situs/nexus test outside of the aviation context. *Foremost Ins. Co.*, 457 U.S. at 673–74, 102 S.Ct. at 2657–58. The central issue before this court, therefore, is whether plaintiff's claims satisfy the two-part test for application of federal maritime law.

The court, in determining the law applicable to the instant action, must first determine whether defendant's alleged act of negligence satisfies the "situs" test. In this regard, the U.S. Court of Appeals for the Fifth Circuit has applied an "impact" analysis or, in other words, a determination of where the alleged negligence "took effect." *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 288 (5th Cir.1989). The Fifth Circuit's interpretation of the "situs" requirement as applied by the "impact" analysis requires that the negligent acts directly produce a major injury or "take effect" on navigable waters. *Id.* at 289; *see Woessner v. Johns–Manville Sales Corp.*, 757 F.2d 634, 638 (5th Cir.1985). Because plaintiff Carolyn Dean sustained her injuries when she fell at her home several blocks away from the vessel at issue and had no effect whatsoever on maritime commerce, the court cannot fathom how her claims satisfy the "situs" requirement to invoke maritime jurisdiction.

Second Shipmor, however, argues, without explanation, that the "situs" requirement has been met under *Sisson v. Ruby*, —— U.S. ——, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), and the Admiralty Extension Act, 46 App.U.S.C. § 740 (1988). In *Sisson*, the Supreme Court stated that its decision in *Executive Jet* did not reject the premise that a tort must occur on navigable waters but, rather, broadened this test by requiring a determination of "whether such an incident is likely to disrupt commercial activity." *Sisson*, 110 S.Ct. at 2896. In the instant case, defendant makes no allegation, and the court finds no facts supporting one, that plaintiff's falling on the stairs in her home could be potentially disruptive of maritime commerce.

The Admiralty Extension Act broadens maritime jurisdiction to injuries caused by a vessel on navigable waters even though such injury may have been done or consummated on land. 46 App.U.S.C. § 740. *See generally* Annotation, *Validity, Construction, and Application of Admiralty Extension Act*, 14 A.L.R.Fed. 664 (1973) (discussion of purposes and general effect of statute). The Fifth Circuit, however, has evinced a "conviction that jurisdiction under the Admiralty Extension Act, enacted in 1948, is necessarily constrained by the principles set forth in the subsequent Supreme Court case of *Executive Jet ...*, and the case law left in its somewhat irregular contrails." *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.*, 644 F.2d 1132, 1135 (5th Cir.), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). Therefore, because no admiralty jurisdiction exists under the "situs" test, the Admiralty Extension Act does not provide a separate basis for application of maritime law.

---

**5.** The Supreme Court, in *The Plymouth*, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1866), defined the strict "locality" test as follows: "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." *Id.* at (3 Wall) 36. This test remained in effect until the Court broadened its application in the *Executive Jet* decision of 1972.

### 3. The "Nexus" Requirement

Defendant also argues that the factual circumstances of this case satisfy the second prong of admiralty's jurisdictional test. The court, in an abundance of caution, will consider whether the "nexus" test has been satisfied.

The Fifth Circuit, in *Kelly*, set forth the following four factors to determine whether a "nexus" to maritime activity had been established: "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of admiralty law." *Kelly*, 485 F.2d at 525; *see Woessner*, 757 F.2d at 639. The application of these four factors to the facts at hand militate against admiralty jurisdiction.

No party asserts that the allegedly injured plaintiff worked aboard the vessel or, for that matter, in any type of maritime-related activity. Next, while the vehicles and instrumentalities involved a vessel whose emissions allegedly caused injuries to plaintiff on the stairway of her home, the vessel's involvement seems to be tangential at best. Third, the court does not find hydrocarbons emitted into the atmosphere, nor plaintiff's alleged fall, to be purely maritime. Last, the traditional concepts of maritime law will not be violated by applying state law to the unusual factual circumstances of this case.

Second Shipmor, in support of its contention, refers the court to several cases including *Nissan Motor Corp. v. Maryland Shipbuilding & Drydock Co.*, 544 F.Supp. 1104 (D.Md.1982), *aff'd without opinion*, 742 F.2d 1449 (4th Cir.1984), and *Parsell v. The City Lumber Co. of Bridgeport, Inc.*, 1977 A.M.C. 1704 (D.Conn.1976) (not officially reported). The court, however, finds these cases easily distinguishable and, therefore, inapplicable to the instant case.

The United States District Court for the District of Maryland in *Nissan* held maritime law to apply where plaintiff's cars were damaged by smoke and paint spray emitted during operations in a shipbuilding yard's adjacent property. The plaintiff in *Nissan* asserted its claims in admiralty, and, in an unpublished ruling, the court held such jurisdiction to exist under the Admiralty Extension Act. 544 F.Supp. at 1108. The court, however, resorted to borrowing from Maryland state law to adjudicate the merits of the case. This case differs in that plaintiff has exercised her right to common law remedies under the "savings to suitors" clause. Moreover, the court finds her claims to be substantially unrelated to any type of maritime activity.

*Parsell* involved claims brought in admiralty by the plaintiffs for property damage allegedly sustained by cement dust blown from vessels during discharge. The federal court rejected a land-based defendant's effort to avoid liability through application of state law. *Parsell*, 1977 A.M.C. at 1710. In so doing, the court reasoned that adjudication of claims arising out of one set of facts under maritime law for one defendant *and* state law for another would run counter to judicial economy and the purpose of the Admiralty Extension Act to eliminate rigid divisions between the admiralty and civil sides of the federal courts. *Id.* The circumstances in *Parsell* simply do not equate to those in this case, where the plaintiff invoked the savings clause to seek her remedy and, further, where she exerts only her own claims against one defendant. The facts before this court, therefore, do not independently satisfy the requirements for maritime jurisdiction.

The court, therefore, finds the "nexus" to traditional maritime activity in this case to be lacking. Moreover, the cases provided by defendant do not provide any persuasive basis for this court finding a relation between plaintiff's claims and traditional maritime activity.

### CONCLUSION

Plaintiff's claims do not possess the "salty" flavor necessary to support admiralty jurisdiction. Second Shipmor's motion, therefore, will be denied, and Carolyn Dean's claims shall be determined by the

application of state law.[6]

---

6. Second Shipmor argues that Article 2317 of the Louisiana Civil Code provides no basis for liability because the SS OVERSEAS OHIO evinced no relevant defect or vice. The court expresses no opinion as to the statutes or regulations applicable to this case. The application of particular statutes and/or regulations, however, should be considered by the parties as perhaps containing issues ripe for early determination by motion.