CAMERON OFFSHORE BOATS, INC.

v.

ALPINE OCEAN SEISMIC SURVEYS,
Seal Craft Operators, Inc. AGIP
Petroleum Co., Inc.

Civ. A. No. 93–2128.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 28, 1994.

H. David Vaughan, II, Lake Charles, LA, for plaintiff.

Larry G. Canada, New Orleans, LA, for defendants.

## MEMORANDUM RULING

EDWIN F. HUNTER, Jr., Senior District Judge.

The original seed from which this suit sprouted was Alpine Ocean Seismic Surveys' ("Alpine") alleged failure to fully reimburse plaintiff for the charter of plaintiff's vessel. Initially, Alpine entered into a contract with co-defendant, Seal Craft Operators, Inc. ("Seal Craft"), wherein the latter agreed to provide a vessel for Alpine's use in conducting seismic surveying operations. Apparently, Seal Craft secured an agreement with Cameron Offshore Boats, Inc. ("Cameron Offshore"), whereby Cameron Offshore provided a vessel, the M/V DEBORAH McCALL, for Alpine's use. Concerned that they would not be reimbursed for the charter of the DEBORAH McCALL, Cameron Offshore filed suit in state court against Alpine and Seal Craft, seeking a total of $121,596.11 for services rendered. To secure its claim, Cameron Offshore attached Alpine's equipment which was aboard the chartered vessel.

On December 14, 1993, Alpine removed the case to federal court. Thereafter, Alpine filed a counter-claim, alleging wrongful seizure and tortious conversion under Louisiana law resulting from Cameron Offshore's alleged "self help" in unilaterally seizing Alpine's equipment. On June 24, 1994, Seal Craft was dismissed from the suit in accordance with U.L.L.R. 11.02 W for lack of filing an answer and plaintiff's failure to confirm a default.

In April, 1994, Cameron Offshore amended its petition to add Agip Petroleum Company, Inc. ("Agip"), Santa Fe Energy Operating Partners, Inc. ("Santa Fe Operating") and Santa Fe Energy Resources, Inc. ("Santa Fe Resources"). The amended complaint alleged that these defendants acquired a working interest in several offshore mineral leases, and contracted with Alpine to conduct seismic surveys of the area in search of oil

and gas deposits. The amended complaint further stated that to the extent Alpine owed Seal Craft any portion of the open account, said rights were assigned to Cameron Offshore.[1] Plaintiff also seeks a writ of sequestration over the oil or gas wells, rigs, and other equipment located within certain offshore leases.

Presently before the court is Agip's motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Also, Cameron Offshore seeks to further amend its complaint to add a non-diverse defendant, and to remand the action to state court. We discuss each in turn.

*Motion to Dismiss*

When considering a motion to dismiss for failure to state a claim, the district court must take factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. Unless it appears "beyond a doubt that the plaintiff can prove *no* set of facts in support of his claim which entitle him to relief", the complaint should not be dismissed for failure to state a claim, and leave to amend should be liberally granted.

*Fernandez–Montes v. Allied Pilots Asso.*, 987 F.2d 278, 284 (5th Cir.1993) (citations omitted).

Moreover, in considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court's inquiry is limited to the contents of the complaint. *Watermeier v. Continental Oil Co.*, 818 F.Supp. 929, 231 (E.D.La.1993). When a court considers material outside the pleadings, a motion to dismiss under Rule 12(b)(6) should be converted into a motion for summary judgment under Rule 56. *Triplett v. Heckler*, 767 F.2d 210, 212 (5th Cir.1985) *cert.*

*denied,* 474 U.S. 1104, 106 S.Ct. 889, 88 L.Ed.2d 923 (1986).

Agip's motion alleges that, 1) the Louisiana Oil Well Lien Act ("LOWLA"), La.R.S. 9:4861 et seq., does not encompass the factual situation in this case and/or 2) the property described in the lien was not reasonably subject to identification.[2]

It is well settled in Louisiana that statutes creating privileges and liens are in derogation of common rights and must be construed stricti juris, but this does not mean strained or unnatural construction. It means a fair, reasonable and natural interpretation by the ordinary rules for the construction of statutes with the cardinal object of ascertaining the intention of the legislature.

*Continental Cas. Co. v. Associated Pipe & Supply Co.*, 279 F.Supp. 490 (E.D.La.1967) (citations omitted) *affirmed in part and vacated in part* (on other grounds), 447 F.2d 1041 (5th Cir.1971).

In addressing whether the act encompasses the factual situation in this case, we turn to the pertinent language of the statute itself:

A. Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, ... or performs any labor or service in the construction, operation, or repair or in connection with the construction, operation, or repair of any flow lines or gathering lines, regardless of their length, which are attached to or connected with the oil, gas or water well or wells, and any pipeline owned by the producer, operator or contract operator of the well ...

B. Any person who does any trucking, towing or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies for or in

**1.** Following negotiations between Alpine and Cameron Offshore, and the partial payment of the unpaid balance, Cameron Offshore now only seeks $99,096.58.

**2.** In its memorandum, movant refers to plaintiff's lien affidavits, stating that they were attached to

their motion as exhibits "A" and "B". However, exhibits "A" and "B" do not appear in the record. This omission does not affect our consideration, however, since extrinsic evidence is not considered by the court in a motion to dismiss.

**1582**

connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells, or for or in connection with construction, operation or repair of any flow lines or gathering lines, ... has a privilege on all oil or gas produced from the well ... and the lease whereon the same are located, ...

La.R.S. 9:4861.

In plaintiff's amended petition, they state that Alpine conducted seismic surveys in connection with the "search of oil and gas". In their opposition memorandum, plaintiff asserts that the surveys were conducted in anticipation of future pipelines. To the extent that the surveying was conducted to provide the necessary groundwork prior to installation of a rig or pipeline, then it would fall under the broad, "in connection with" language of the statute. The Fifth Circuit has upheld § 9:4861 liens in situations where the owners of a crew boat transported pipeline workers; and a caterer who furnished food and lodging for pipeline construction. *Continental Cas. Co. v. Associated Pipe & Supply Co.*, 447 F.2d 1041 (5th Cir.1971); *see also, C.F. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 918 (5th Cir.1988) (citing, *Continental Cas. Co.*, with approval). As the case stands now, the pleadings indicate that the survey work, and the accompanying vessel charter, fall under the "broad and comprehensive coverage" of LOWLA. *C.F. Dahlberg*, 836 F.2d at 918.[3]

■ We also find no merit to Agip's second contention that the liens are not "reasonably subject to identification" as required by La.R.S. 9:4862. The only evidence which we have concerning the description of the property subject to the lien is contained in paragraph 4(b) of plaintiff's first supplemental

and amending complaint. Listed are several block numbers and the equipment and appurtenances located thereon. Movant urges us to find that this description is insufficient to reasonably identify the lien. In *Mercantile National Bank v. J. Thomas Driscoll, Inc.*, 195 So. 497, 502; 194 La. 935 (La.1940), the supreme court upheld the validity of a lien which described all of the lots in a subdivision, even though the evidence only supported a lien over some of the lots.[4] Similarly in this case, the lien encompasses several offshore blocks, yet only pertains to the equipment and interests of the leaseholders enumerated in the petition. We find no merit to Agip's second prong of its motion to dismiss. The motion to dismiss is DENIED.

### Motions to Amend and Remand

Federal court jurisdiction in this case is presently predicated upon diversity of citizenship. 28 U.S.C. § 1332. In its motion to amend, plaintiff seeks to add CNG Producing Company ("CNG"), a Delaware corporation with its principal place of business in Louisiana. The amendment, if granted, would destroy our diversity jurisdiction. The motion to amend need not be problematic, however, if an alternative basis exists for federal court jurisdiction. In this regard, defendants argue that plaintiff's complaint arises under admiralty jurisdiction, or alternatively, federal question jurisdiction attaches under the Outer Continental Shelf Lands Act ("OCS-LA") 43 U.S.C. §§ 1331–1356.

### Admiralty Jurisdiction

■ The district courts shall have original jurisdiction, exclusive of the courts of the states, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all

---

**3.** *McGee v. Missouri Valley Dredging Co.*, 182 So.2d 764 (La.App. 1st Cir.1966), *cert. denied*, 249 La. 62, 184 So.2d 734 (La.1966) is inapplicable in this instance. In *McGee*, the surveying work was performed for a pipeline which was not connected to a well or rig. *See, Continental Cas. Co., supra.* At the time *McGee* was decided, LOWLA did not explicitly apply to work or services performed "in connection with" a pipeline.

**4.** La.R.S. 9:4862 was not initially enacted until 1942. Yet, the Supreme Court in *Mercantile National Bank* stated that the lien should "apprise third persons of the kind of a lien which is claimed, what property is affected, and to fix the limit of the claim so that no more can be claimed." *Mercantile National Bank*, 195 So. at 502. The standard is at least the equivalent of the "reasonably subject to identification" requirement of La.R.S. 9:4862.

cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333, in pertinent part.

The so-called "savings to suitors" clause permits plaintiffs to bring their admiralty and maritime claims in state court if they so choose. *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1542 (5th Cir.) *cert. denied*, —— U.S. ——, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). Ordinarily, suits brought in state court pursuant to the "savings to suitors" clause are non-removable, in the absence of diversity jurisdiction. *Id.* In the case *sub judice*, diversity jurisdiction existed and provided the basis for removal. Plaintiff's proposed amendment to add a non-diverse defendant, however, would dissolve diversity jurisdiction. Yet, the facts within the complaint reveal a maritime nexus which may provide an independent basis for subject matter jurisdiction. *Williams v. M/V SONORA*, 985 F.2d 808 (5th Cir.1993).

▇▇▇▇ Plaintiff's petition does not invoke or explicitly rely on admiralty or maritime law as a basis for recovery. It is certainly true that plaintiff could have invoked our admiralty jurisdiction if it had so chosen.[5] But plaintiff was not required to do so.[6]

▇▇▇▇ Defendants allege that from the face of plaintiff's complaint, admiralty jurisdiction properly lies. Without expressly stating, defendants evidently rely upon the "well-pleaded complaint rule". Yet, the well-pleaded complaint rule only applies for purposes of determining federal question jurisdiction, which is distinct and independent

from admiralty jurisdiction. *See, Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1160 (5th Cir.1989) *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). Instead, for admiralty jurisdiction to obtain, plaintiff must insert a statement in the petition identifying the claim "as an admiralty or maritime claim for purposes of rules 14(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims." Fed.R.Civ.P. 9(h); *Bodden v. Osgood*, 879 F.2d 184, 186 (5th Cir.1989); *Alleman v. Bunge Corp.*, 756 F.2d 344, 345 (5th Cir.1984); *Baris*, 932 F.2d at 1547; *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 345 (5th Cir.1991) ("a simple statement asserting admiralty or maritime claims" is required to invoke admiralty jurisdiction). In this case, plaintiff's petition contains no statement which could conceivably evidence reliance upon admiralty or maritime law. Accordingly, admiralty jurisdiction does not lie.

## OCSLA

The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devises permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such

---

**5.** "A ship charter is unquestionably a maritime contract." *Angelina Cas. Co. v. Exxon Corp.*, 876 F.2d 40, 41 (5th Cir.1989).

**6.** As mentioned previously, in a case which raises maritime questions, the plaintiff may bring a maritime action, *in personam* or *in rem*, or alternatively, under state law or other federal statutes. *Linton v. Great Lakes Dredge and Dock Co.*, 964 F.2d 1480, 1484 (5th Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992). *In rem* maritime claims fall exclusively within the purview of federal court jurisdiction; since historically, actions *in rem* did not lie at common law. *Dean v. Maritime Overseas Corp.*, 770 F.Supp. 309, 311 (E.D.La.1991) *affirmed*, 981 F.2d 1256 (5th Cir.1992). The following test from the Supreme Court sheds some light upon the nature of this case,

If the cause of action be one cognizable in admiralty, *and* the suit be *in rem* against the thing itself, though a monition also be issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction *or* if the suit be *in personam* against an individual defendant, with an auxiliary attachment against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the savings clause of the statute of a common law remedy.
*Knapp, Stout and Co. v. McCaffrey*, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921 (1900).
It is apparent from plaintiff's complaint that he is proceeding *in personam* against Alpine, with an auxiliary attachment over Alpine's equipment.

resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: *Provided, however,* That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

43 U.S.C. § 1333(a)(1).

Moreover, under the terms of the act, "outer Continental Shelf" is defined as "all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in § 1301 of this Title, and of which the subsoil of the seabed appertains to the United States and are subject to its jurisdiction and control." 43 U.S.C. § 1331(a).

■■■ Plaintiff's petition does not specifically refer to OCSLA. However, under the well-pleaded complaint rule, the court must look to plaintiff's complaint to see whether a claim necessarily arises under federal law. *Collins v. AAA Rent All, Inc.,* 812 F.Supp. 642, 643 (M.D.La.1993); *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806, 808 (5th Cir.) *cert. denied,* — U.S. —, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992). In ascertaining whether a federal question exists, the court looks to see whether "federal law created the cause of action". *Collins, supra.*

First, we emphasize that plaintiff's suit essentially is divided into an *in personam* action against Alpine based on an open account; and an *in rem* action against the lease holders. It is evident that plaintiff's second cause of action falls within the ambit of OCSLA: paragraph 2(a) of plaintiff's first supplemental and amending complaint indicates that the offshore mineral leases are "located in the Gulf of Mexico off the coast of Louisiana"; and, paragraph 4(f) states that the lien applies to wells, pipe lines, drilling rigs, and other equipment located on the offshore leases. This falls under paragraph 1 of 43 U.S.C. § 1333(a).

■■■ It is also clear that federal law created plaintiff's second cause of action. Paragraph (2)(A) of 43 U.S.C. § 1333(a) specifically adopts the civil and criminal laws of each adjacent state, to the extent that they are not inconsistent with other federal laws.[7] Case law also recognizes that federal law is applicable, with adjacent state law acting as surrogate federal law. *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 328 (5th Cir. 1987).

> "In other words, if plaintiff seeks relief based on state law for an accident arising from operations conducted on the outer Continental Shelf which involved exploration of minerals, the plaintiff seeks relief based on federal law through the OCSLA. Therefore, a claim for relief under state law for an accident which occurs on the outer Continental Shelf acquires federal question jurisdiction under 28 U.S.C. § 1331."

*Broussard v. John E. Graham & Sons,* 798 F.Supp. 370, 372 (M.D.La.1992). In reality, the contours of plaintiff's remedy are fashioned under state law. However, through operation of OCSLA, plaintiff's cause of action is deemed to arise under federal law. Accordingly, we find that plaintiff's cause of action against the lease holders is based upon OCSLA and properly raises federal question jurisdiction under 28 U.S.C. § 1331. Moreover, we have supplemental jurisdiction over plaintiff's *in personam* claim against Alpine. 28 U.S.C. § 1367.

*The Motion to Amend*

Having concluded that we have an alternative basis for original subject matter jurisdiction other than diversity, we view the motion to amend to add a non-diverse defendant under a less demanding standard. If the motion to amend would have destroyed our

---

7. Specifically, for adjacent state law to apply as surrogate federal law under OCSLA, three conditions must be satisfied,
   (1) The controversy must arise on a site covered by OCSLA (i.e. the subsoil, sea bed, or artificial structures permanently or temporarily attached thereto).
   (2) Federal maritime law must not apply of its own force.
   (3) The state law must not be inconsistent with federal law.
*Union Texas Petroleum Corp. v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir.) *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990).
All three conditions are satisfied in this case.

subject matter jurisdiction, we would have applied 28 U.S.C. § 1447(e) and the factors enumerated in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987), *appeal after remand*, 869 F.2d 879 (5th Cir.), *cert. denied*, 493 U.S. 851, 110 S.Ct. 150, 107 L.Ed.2d 108 (1989). Instead, we apply Fed.R.Civ.P. 15 which states that "leave shall be freely given [to amend complaint] when justice so requires."

 Motions for leave to amend should be viewed favorably unless there is a "substantial reason" to deny the motion to amend. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir.1981). Factors which may justify denying a motion to amend include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Id.* The court may also consider any prejudice which the movant may incur in denying the motion to amend. *Dussouy, supra.*

We find no substantial reason to deny the motion to amend. The motion was filed as soon as CNG's interest in the lease was discovered. There will be no additional delays, or additional discernable prejudice to opposing parties. Also, the possibility exists that the effectiveness of one of plaintiff's liens may be hampered due to the absence of the proposed defendant, CNG. Accordingly, plaintiff's motion to amend is GRANTED.[8]

---

8. We note, in passing, that contrary to defendants' assertion, plaintiff's joint motion to amend and to remand not only is permissible, but is preferred in instances where the amendment would destroy subject matter jurisdiction. U.L.L.R. 2.18 W requires notification that a determination under 28 U.S.C. § 1447(e) will be required. Certainly, a motion to remand filed contemporaneously with the motion to amend not only provides the required notice, but also brings matters to a head.